**UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| CELIA CASTELAZ; BRITTANIE NALLEY; NORTHA JOHNSON; and LORI CARTER, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>THE ESTÉE LAUDER COMPANIES INC.; BOBBI BROWN PROFESSIONAL COSMETICS, INC.; ESTÉE LAUDER INC.; SMASHBOX BEAUTY COSMETICS, INC.; and TOO FACED COSMETICS, LLC;<br><br>    Defendants. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Celia Castelaz, Brittanie Nalley, Northa Johnson, and Lori Carter (together "Plaintiffs"), individually and on behalf of all others similarly situated (collectively, the "Class," as more fully defined below), bring this Class Action Complaint against Defendants, The Estée Lauder Companies Inc., Bobbi Brown Professional Cosmetics, Inc. ("Bobbi Brown"), Estée Lauder Inc. ("Estée Lauder"), Smashbox Beauty Cosmetics, Inc. ("Smashbox"), and Too Faced Cosmetics, LLC ("Too Faced") (each individually a "Defendant" and collectively, "Defendants"), and, based upon Plaintiffs' personal knowledge, investigation by retained counsel, and personal belief, allege as follows:

## NATURE OF THE CASE

1. When consumers shop for products, they expect that companies will follow the law in promoting and advertising those products.

2. Consumers expect that, if they are sharing their data with companies in connection with a potential transaction, the companies will be transparent about what data is being collected, how it is being used, and by whom.[1] This is particularly the case when companies collect what has come to be known as "biometric data."

3. Facial scanning technology, which is used for anything from applying filters to photographs to verifying a user's identity, uses biometric data. Fingerprint authentication, where a user's fingerprint is used in lieu of a password or key, is another type of technology that uses biometric data.

4. Consumers have substantial privacy concerns regarding the use of facial scanning. According to a recent survey, more than 80% of consumers are uncomfortable with apps storing

---

[1] Lisa Joy Rosner, How Biometric Data Will Shift The Privacy Conversation, *Forbes* (July 2, 2019), *available at* https://www.forbes.com/sites/forbescommunicationscouncil/2019/07/02/how-biometric-data-will-shift-the-privacy-conversation/?sh=38b3ce093f4c.

images of their faces.[2] And for good reason: for example, in the not-too-distant past, a relatively unknown company, Clearview AI, was caught scraping user photos from social media companies' databases and using facial-recognition technology on those photos to compile a database for secret and illicit surveillance purposes.[3]

5.      In response to the ever-increasing prevalence and proliferation of biometric information collection (whether lawful or not), the Illinois General Assembly passed the Biometric Information Privacy Act of 2008, 740 Ill. Comp. Stat. §§14, *et seq*. ("BIPA").

6.      BIPA recognizes that because biometric information is "unlike other unique identifiers that are used to access finances or other sensitive information," in that it cannot be changed and is "biologically unique to the individual," special protections needed to be placed upon its use, collection, retention, and destruction.

7.      In the language of the BIPA statute itself, the Illinois General Assembly directly addressed the public's stake in this important sphere of data privacy, noting that "[a]n overwhelming majority of members of the public *are weary of the use of biometrics when such information is tied to finances and other personal information.*" 740 Ill. Comp. Stat. §14/5 (emphasis added).

8.      Recognizing that typical consumers are not equipped to defend themselves from large corporations bent on acquiring and monetizing their most private, unchangeable information, the Illinois Legislature, by enacting BIPA, gave consumers a powerful, protective tool.

---

[2] Danielle Commisso, Concerns Grow Over Consumer Privacy and Facial Recognition Tech, Civic Science (Apr. 20, 2021), *available at* https://civicscience.com/concerns-grow-over-consumer-privacy-and-facial-recognition-tech/#:~:text=Like%20most%20new%20technologies%2C%20younger%20generations%20are%20more, facial%20recognition%20use%20on%20social%20media%20and%20apps.

[3] Will Knight, Clearview AI Has New Tools to Identify You in Photos, *Wired* (Oct. 4, 2021), *available at* Clearview AI Has New Tools to Identify You in Photos | WIRED.

9. Despite consumer concerns regarding facial-scanning technology, and BIPA's clear mandate, Defendants have refused, and continue to refuse, to inform website users that they are using technology on their beauty brand websites, including, as relevant here, toofaced.com, smashbox.com, esteelauder.com, and bobbibrowncosmetics.com (together, the "Brand Websites") to collect users' biometric facial scans, and neither informs website users that their biometric identifiers are being collected, nor asks for their consent.

10. Defendants sell the image of glamour and beauty to consumers, inviting them to virtually "try on" makeup through the "Virtual Try-On" feature found on each of the Brand Websites. Through this feature, visitors to the Brand Websites—including Plaintiffs and Class members—are able to view themselves with various makeup products on their face. All a user needs to do is enable their computer camera or phone camera, after which the technology embedded and running on the Brand Websites creates a live video feed of the user's face using biometric data, with the selected makeup products applied on top of the live feed. Alternatively, a consumer can upload a photo to be used by the Virtual Try-On feature on the Brand Websites. The Virtual Try-On feature then collects biometric data from the photo to place the selected makeup products on the user's face.

11. But, unbeknownst to their website users—including Plaintiffs and Class members—Defendants collect users' detailed and sensitive biometric identifiers and information, including complete facial scans, through the Virtual Try-On tool on each of the Brand Websites, and Defendants do this without first obtaining users' consent, or informing them this data is being collected.

12.     Defendants also fail to disclose to visitors of the Brand Websites who use the Virtual Try-On tool—including Plaintiffs and Class members—that their biometric information or biometric identifiers are being collected or stored.

13.     Defendants also fail to inform users of the specific purpose for the collection of their biometric information or biometric identifiers, or a schedule setting out the length of time during which their biometric information or biometric identifiers will be collected, stored, used, or when they will be destroyed, and fail to comply with BIPA's retention and destruction guidelines.

14.     Defendants have violated BIPA—and continue to violate BIPA—each and every time a website visitor based in Illinois uses Defendants' Virtual Try-On tool found on the Brand Websites, because Defendants continue to collect and store or facilitate the storage of biometric information or biometric identifiers without disclosure to or consent of any of the consumers who try on cosmetics on the Brand Websites, necessarily using Defendants' Virtual Try-On tool to do so.

15.     Defendants have also violated BIPA—and continue to violate BIPA—because Defendants have not and do not comply with BIPA's permanent destruction guidelines that biometric information and identifiers in Defendants' possession must be permanently destroyed either when the initial purpose for collecting or obtaining such identifiers or information has been satisfied, or within 3 years of the consumer's last interaction with Defendants' Virtual Try-On tools, whichever comes first.

16.     As a result of Defendants' BIPA violations—violations that are ongoing and continue through the present day—Plaintiffs, individually and on behalf of Class members, ask the Court to impose upon Defendants the BIPA-mandated statutory penalties relating to the collection, storage, and disclosure of Plaintiffs' biometric identifiers and biometric information, as

well as injunctive relief requiring Defendants' destruction of already-collected and stored information, and their adoption of disclosures which inform consumers about Defendants' collection of their biometric data and identifiers.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332, because: (a) this is a proposed class action in which there are at least 100 Class members; (b) the parties are minimally diverse, as Plaintiffs and Defendants are domiciled in different states; and (c) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs.

18.     This Court has personal jurisdiction over Defendants because Defendants regularly conduct business throughout Illinois, including selling cosmetics in Illinois and offering the Virtual Try-On tools on the Brand Websites to consumers in Illinois.

19.     Venue is also appropriate in this District under 28 U.S.C. § 1391(b)(2) because, a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## PARTIES

### *Plaintiff Celia Castelaz*

20.     Celia Castelaz is a citizen and a resident of DuPage County, in the State of Illinois. While at her residence in DuPage, Ms. Castelaz used the Virtual Try-On tool on the websites of Estée Lauder (esteelauder.com), Bobbi Brown (bobbibrowncosmetics.com), and Smashbox (smashbox.com), multiple times over the past year to try on various types of makeup, spending approximately thirty minutes to one hour on each Brand Website each time she used the Virtual Try-On tool.

21.     Ms. Castelaz does not recall seeing or reviewing any terms and conditions or privacy policies when visiting esteelauder.com, bobbibrowncosmetics.com, and smashbox.com, or when using the Virtual Try-On tool on those websites, nor does she recall Defendants making such policies readily accessible on esteelauder.com, bobbibrowncosmetics.com, smashbox.com, or otherwise so she could review them prior to using the Virtual Try-On tool. Ms. Castelaz did not see any indication that her biometric identifiers or information would be collected or distributed if she used Defendants' Virtual Try-On tool. Ms. Castelaz was also not informed by Defendants (for instance, by a pop-up notification upon activation of the Virtual Try-On tool) that using the Virtual Try-On tool would allow Defendants to collect her biometric identifiers and biometric information.

22.     Ms. Castelaz did not understand that Defendants would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool on esteelauder.com, bobbibrowncosmetics.com, and smashbox.com had she been aware of this fact.

23.     Defendants never obtained, or attempted to obtain, Ms. Castelaz's informed, written consent to collect, transmit, store, or process her biometric identifiers or biometric information, nor did Defendants inform Ms. Castelaz about the length of time her biometric identifiers or biometric information would be stored, when or whether it would be destroyed, or that Defendants would transfer her biometric information to a third party for processing.

24.     Ms. Castelaz never provided a written release to Defendants authorizing Defendants to collect, store, or use her biometric identifiers or biometric information, including her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

*Plaintiff Brittanie Nalley*

25.      Brittanie Nalley is a citizen and a resident of Saline County, in the State of Illinois. While at her residence in Saline County, Illinois, Ms. Nalley used Too Faced's Virtual Try-On tool on toofaced.com approximately four times to try on various types of makeup, with her most recent use of the Virtual Try-On tool occurring around February 2022. Ms. Nalley spent approximately thirty minutes on toofaced.com each time that she used the Virtual Try-On tool.

26.      Ms. Nalley does not recall seeing or reviewing any terms and conditions or privacy policies when visiting toofaced.com or using the Virtual Try-On tool, nor does she recall Too Faced making such policies readily accessible on toofaced.com or otherwise so that she could review them prior to using the Virtual Try-On tool.  Ms. Nalley did not see any indication that her biometric identifiers or information would be collected or distributed if she used the Virtual Try-On tool. Ms. Nalley was also not informed by Too Faced (for instance, by a pop-up notification upon activation of the Virtual Try-On tool) that using the Virtual Try-On tool on toofaced.com would allow Too Faced to collect her biometric identifiers and biometric information.

27.      Ms. Nalley did not understand that Too Faced would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool on toofaced.com had she been aware of this fact.

28.      Too Faced never obtained, or attempted to obtain, Ms. Nalley's informed, written consent to collect, transmit, store, or process her biometric identifiers or biometric information, nor did Too Faced inform Ms. Nalley about the length of time her biometric identifiers or biometric information would be stored, when or whether it would be destroyed, or whether it would transfer her biometric identifiers and biometric information to a third party for processing.

29.     Ms. Nalley never provided a written release to Too Faced authorizing it to collect, store, or use her biometric identifiers and biometric information, including her facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

**_Plaintiff Lori Carter_**

30.     Lori Carter is a citizen and a resident of St. Clair County, in the State of Illinois. While at her residence in St. Clair County, Illinois, Ms. Carter used Bobbi Brown's Virtual Try-On tool on bobbibrowncosmetics.com approximately four times to try on various types of makeup, with her most recent time using the Virtual Try-On tool occurring in November 2021. Ms. Carter spent between fifteen and forty-five minutes on bobbibrowncosmetics.com each time that she used the Virtual Try-On tool.

31.     Ms. Carter does not recall seeing or reviewing any terms and conditions or privacy policies when visiting bobbibrowncosmetics.com or using the Virtual Try-On tool, nor does she recall Bobbi Brown making such policies readily accessible on bobbibrowncosmetics.com or otherwise so that she could review them prior to using the Virtual Try-On tool. Ms. Carter did not see any indication that her biometric identifiers or information would be collected or distributed if she used the Virtual Try-On tool. Ms. Carter was also not informed by Bobbi Brown (for instance, by a pop-up notification upon activation of the Virtual Try-On tool) that using the Virtual Try-On tool on bobbibrowncosmetics.com would allow Bobbi Brown to collect her biometric identifiers and biometric information.

32.     Ms. Carter did not understand that Bobbi Brown would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool on bobbibrowncosmetics.com had she been aware of this fact.

33. Bobbi Brown never obtained, or attempted to obtain, Ms. Carter's informed, written consent to collect, transmit, store, or process her biometric identifiers or biometric information, nor did Bobbi Brown inform Ms. Carter about the length of time her biometric identifiers or biometric information would be stored, when or whether it would be destroyed, or whether it would transfer her biometric information to a third party for processing.

34. Ms. Carter never provided a written release to Bobbi Brown authorizing it to collect, store, or use her biometric identifiers or biometric information, including facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

*Plaintiff Northa Johnson*

35. Northa Johnson is a citizen and a resident of Cook County, in the State of Illinois. While at her residence in Cook County, Illinois, Ms. Johnson used Smashbox's Virtual Try-On tool on smashbox.com approximately four times to try on various types of makeup, with her most recent time using the Virtual Try-On tool occurring in late 2021. Ms. Johnson spent between twenty and thirty minutes on smashbox.com each time that she used the Virtual Try-On tool.

36. Ms. Johnson does not recall seeing or reviewing any terms and conditions or privacy policies when visiting smashbox.com or using the Virtual Try-On tool, nor does she recall Smashbox making such policies readily accessible on smashbox.com or otherwise so that she could review them prior to using the Virtual Try-On tool. Ms. Johnson did not see any indication that her biometric identifiers or biometric information would be collected or distributed if she used the Virtual Try-On tool. Ms. Johnson was also not informed by Smashbox (for instance, by a pop-up notification upon activation of the Virtual Try-On tool) that using the Virtual Try-On tool on

9

smashbox.com would allow Smashbox to collect her biometric identifiers and biometric information.

37.    Ms. Johnson did not understand that Smashbox would collect or distribute her biometric data, and she would not have used the Virtual Try-On tool on smashbox.com had she been aware of this fact.

38.    Smashbox never obtained, or attempted to obtain, Ms. Johnson's informed, written consent to collect, transmit, store, or process her biometric identifiers or biometric information, nor did Smashbox inform Ms. Johnson about the length of time her biometric identifiers or biometric information would be stored, when or whether it would be destroyed, or whether it would transfer her biometric identifiers and biometric information to a third party for processing.

39.    Ms. Johnson never provided a written release to Smashbox authorizing it to collect, store, or use her biometric identifiers or biometric information, including facial scans or facial geometry, and she was never informed, in writing or otherwise, about the purpose for collecting her biometric data.

***Defendants***

40.    Defendant and parent company, The Estée Lauder Companies Inc., is incorporated in Delaware, with its principal place of business at 767 Fifth Avenue, New York, NY 10153.

41.    The Estée Lauder Companies Inc. is one of the world's leading manufacturers and marketers of quality skin care, makeup, fragrance, and hair care products. The company's products are sold in approximately 150 countries and territories, and marketed through its subsidiary brands, including, as relevant here: Bobbi Brown, Estée Lauder, Smashbox, and Too Faced.

42.    In 2021, The Estée Lauder Companies Inc. had $16.22 billion in consolidated sales and $2.62 billion in operating income.

43. On information and belief, The Estée Lauder Companies Inc. made, oversaw, and/or approved the decision to implement the Virtual Try-On tool on each of its subsidiary Defendant's websites, including on esteelauder.com, toofaced.com, smashbox.com, and bobbibrowncosmetics.com.

44. Defendant Bobbi Brown, a wholly-owned subsidiary of The Estée Lauder Companies Inc., is incorporated in Delaware, with its principal place of business at 575 Broadway #4, New York, NY 10012.

45. Defendant Estée Lauder, a wholly-owned subsidiary of The Estée Lauder Companies Inc., is incorporated in Delaware, with its principal place of business at 767 Fifth Avenue, New York, NY 10153.

46. Defendant Smashbox, a wholly-owned subsidiary of The Estée Lauder Companies Inc., is incorporated in California, with its principal place of business at 5838 Warner Drive, Culver City, CA 90232.

47. Defendant Too Faced, a wholly-owned subsidiary of The Estée Lauder Companies Inc., is incorporated in Delaware, with its principal place of business at 18231 McDurmott West, Irvine, CA 92614.

48. Defendants sell their makeup products in brick-and-mortar retail stores and through their Brand Websites.

## FACTUAL ALLEGATIONS

**A.  BIPA'S Legal Framework**

49.  The Illinois General Assembly enacted BIPA to protect the privacy rights of every Illinois resident who has their unique, biometric identifiers captured or retained by self-interested, profit-obsessed companies.

50.  In enacting BIPA, the General Assembly found that the sensitivity of biometric information and identifiers warrants heightened protection because companies frequently collect it from individuals like Plaintiffs and Class members. Specifically, the General Assembly found that "[b]iometrics are unlike other unique identifiers" like Social Security Numbers because they are "biologically unique to the individual" and cannot be changed if compromised. 740 Ill. Comp. Stat. 14/5(c).

51.  Thus, a person whose biometrics are compromised "has no recourse" and "is at heightened risk for identify theft." *Id*.

52.  When enacting BIPA, the General Assembly recognized that "[t]he full ramifications of biometric technology are not fully known." 740 Ill. Comp. Stat. 14/5(e). Therefore, "[t]he public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 Ill. Comp. Stat. 14/5(f).

53.  BIPA defines "biometric identifiers" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 Ill. Comp. Stat. 14/10.

54.  "Biometric information" is identified as "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." *Id*. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers. *Id*.

55.     Accordingly, BIPA requires "private entities"—including companies like Defendants—that collect certain biometric identifiers or biometric information, or cause such information and identifiers to be collected, to take specific steps to safeguard the biometric data they collect, store, or capture.

56.     Specifically, companies that collect the above-referenced biometric identifiers or biometric information, such as Defendants, must obtain informed consent from consumers prior to collecting such data from them, and they must publicly disclose to consumers their uses, retention of, and a schedule for destruction of the biometric information or identifiers that they do collect.

57.     With respect to safeguarding biometrics, BIPA requires that private entities—including companies like Defendants—that possess biometric identifiers or biometric information must:

> [D]evelop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

*Id*. § 14/15(a).

58.     BIPA also requires that private entities in possession of biometric identifiers or biometric information—including companies like Defendants—must safeguard such data "using the reasonable standard of care within the private entity's industry" and must "store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." *Id*. § 14/15(e).

59.     With respect to informed consent, BIPA provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

*Id*. § 14/15(6).

60.     BIPA further provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." *Id*. § 14/l1(c).

61.     Under BIPA, private entities—including companies like Defendants—are prohibited from disclosing, redisclosing, or otherwise disseminating a consumer's biometric identifier or biometric information (or causing it to be done) unless the consumer has consented to such disclosure or redisclosure. *Id*. § 14/15(d).

62.     BIPA provides for statutory damages, injunctive relief, reasonable attorney's fees and costs, and other relief "as the State or federal court may deem appropriate" when a private entity violates a consumer's rights under the statute. *Id*. § 14/20. Where a violation is the result of a private entity's negligence, BIPA provides for the greater of actual damages or $1,000 in liquidated damages per violation, and, if the violation was intentional or reckless, BIPA provides for the greater of actual damages and liquidated damages of $5,000 per violation. *Id*.

14

**B.      Defendants Collect Website Users' Biometric Information And Identifiers Through The Virtual Try-On Tool**

63.      Defendants operate the Brand Websites, through which they market and sell products (including makeup and skincare).

64.      Defendants market and promote their makeup brands through the Brand Websites, by allowing users and potential customers on each Brand Website to use a tool called the "Virtual Try-On" which permits users to "try on" makeup by augmented reality livestream, by taking a "selfie," or by uploading a picture, which Defendants then use to take a scan of the user's face geometry, and use that scan to "apply" the chosen makeup product on the appropriate parts of the users' face so the user can see how it would look on their face. Through the Virtual Try-On features on the Brand Websites, Defendants are collecting, capturing, possessing, or otherwise obtaining biometric identifiers and biometric information from their online visitors to the Brand Websites.

65.      Anyone who visits the Brand Websites is able to use each website's Virtual Try-On features to try on various products. The Virtual Try-On features are available for a variety of products including lipstick, lip liner, foundation, concealer, eye shadow, eye liner, and blush, depending on the Brand Website.

66.      On esteelauder.com, while the lipsticks and "Complete Look" Virtual Try-On features are accessible using either a computer camera or a mobile device camera, the foundations, "iMatch Virtual Skin Analysis", and "Virtual Tutorial" features are only accessible using a mobile device camera.

67.      On toofaced.com, users can access the Virtual Try-On tool using either a computer camera or mobile device camera to try on multiple products including lipstick, lip gloss, lip balm, foundation, concealer, mascara, and lip liner.

68.     On smashbox.com, users can access the Virtual Try-On tool using either a computer camera or mobile device camera to try on multiple products including lipstick, eye shadow, cheek and lip tint, foundation, tinted moisturizer, lip gloss, eye liner, and eyebrow pencil.

69.     On bobbibrowncosmetics.com, while the eye shadow, eye liner, lip liner, blush, and lip gloss features are accessible using either a computer camera or a mobile device camera, the foundation shade match and "Virtual Look Finder" features are only accessible using a mobile device camera.

70.     The process of using the Virtual Try-On feature on the Brand Websites is detailed below and is virtually the same for all the Virtual Try-On features available on each Brand Website.

71.     To use the Virtual Try-On tool on the Brand Websites, visitors click the "TRY IT ON" button located on the product's picture or next to the color options, as shown in the images from the four Brand Websites below:



*esteelauder.com Virtual Try-On Product Page*

16



*toofaced.com Virtual Try-On Product Page*



*smashbox.com Virtual Try-On Product Page*



*bobbibrowncosmetics.com Virtual Try-On Product Page*

72. After clicking "TRY IT ON," visitors are prompted to use the "Live Camera" feature which, using the camera on their computer or mobile device, creates a live video feed. Alternatively, visitors may opt to "Upload [a] photo."

73. Once a visitor selects an option, the Virtual Try-On tool scans the user's face geometry from the live video feed or uploaded image of the user's face, in order to then superimpose the selected product on the feed or photo, creating an image (whether live or static) which shows what the user would look like with the chosen product on their face.

74. When a visitor to the Brand Websites—including Plaintiffs and Class members, allows Defendants to access their camera livestream or photo with the Virtual Try-On tool Defendants collect, capture, possess, or otherwise obtain their facial biometric data to show the visitor how the product will look on his or her face.



75.     Defendants collect, capture, possess, or otherwise obtain visitors' biometric data locally, directly from the live or uploaded image on the user's device using an advanced facial detection and recognition algorithm run by Defendants' Virtual Try-On features on the Brand Websites. When a visitor to Defendants' Brand Websites uses the Virtual Try-On feature while they (and the device they are using) are physically in Illinois, Defendants collect, capture, possess, or otherwise obtain the visitor's biometric data in Illinois.

76.     Visitors to the Brand Websites are presented with a pop-up screen the first time that they access the Virtual Try-On tool informing the user that their image will be used to provide them with the virtual try-on experience. No pop-up screen is shown to visitors at any subsequent time they use the Virtual Try-On tool on one of the Brand Websites.  A screenshot of the pop-up screen from each Brand Website is shown below:



*esteelauder.com pop-up*



*toofaced.com pop-up*



*smashbox.com pop-up*



*bobbibrowncosmetics.com pop-up*

77.     The above pop-ups on each Brand Website include a hyperlink to the site's privacy

policy, but do not ask users of the Virtual Try-On tool to agree to, or in any way state that users of

21

the Virtual Try-On tool are bound by, the terms of the Privacy Policy or any other potential terms and conditions of the Brand Websites.

78.    The above pop-ups do not inform visitors who use the Virtual Try-on tool on the Brand Websites that their biometric data will be collected, captured, possessed, or otherwise obtained if and when they use the Virtual Try-On feature. The pop-ups merely present a link to the respective site's Privacy Policy and inform visitors that their "image" will be "used" for the "virtual try-on experience," and Defendants do not explain what that entails. Accordingly, Virtual Try-On tool users have not consented to having their biometric data collected, captured, possessed, or otherwise obtained by Defendants through the Virtual Try-On tool on the Brand Websites, regardless of whether they saw or read the pop-up or Privacy Policy on the Brand Websites they visited.

79.    During all times relevant hereto, the link to the esteelauder.com Privacy Policy in the Virtual Try-On Tool pop-up takes the user to a version of the Privacy Policy from May 20, 2021 that does not contain any reference to biometric data, the Virtual Try-On tool or "virtual try-on experience."

80.    During all times relevant hereto, the link to the toofaced.com Privacy Policy in the Virtual Try-On Tool pop-up takes the user to a version of the Privacy Policy from August 17, 2021 that does not contain any reference to biometric data, the Virtual Try-On tool or "virtual try-on experience."

81.    During all times relevant hereto, the link to the smashbox.com Privacy Policy in the Virtual Try-On Tool pop-up takes the user to a version of the Privacy Policy from May 24, 2021 that does not contain any reference to biometric data, the Virtual Try-On tool or "virtual try-on experience."

82.     During all times relevant hereto, the link to the bobbibrowncosmetics.com Privacy Policy in the Virtual Try-On pop-up takes the user to a version of the Privacy Policy from November 15, 2021 that does not contain any reference to the Virtual Try-On tool or "virtual try-on experience."  The Privacy Policy states, in part, under the "Information We Collect" section, that Defendant "may collect" "Biometric information, including a scan of your facial geometry when you use our 'Virtual Look Finder' tool, which we will retain for the duration of your use of the tool." The bobbibrowncosmetics.com Privacy Policy does not provide any information about Defendant capturing and retaining Virtual Try-On tool users' biometric identifiers and biometric information.

83.     Furthermore, Defendants do not require website visitors' written consent to collect, capture, possess, or otherwise obtain their biometric identifiers or biometric information when they used the Virtual Try-On feature on the Brand Websites.

84.     As shown in the images above, see paragraph 76, Brand Websites visitors who use the Virtual Try-On tool are not informed whether or that their use of the Virtual Try-On tool is subject to any terms and conditions, and are not asked to read or consent to any terms and conditions prior to using the Virtual Try-On tool on the Brand Websites. Assenting to any terms and conditions is not a necessary condition to use the Virtual Try-On features on the Brand Websites.

85.     Furthermore, the Terms & Conditions, or Terms of Use, hyperlinks on the Brand Websites are only visible if a user scrolls down to the bottom of the webpage on each Brand Website, where it appears in small letters at the bottom of the screen. The placement of the Terms & Conditions, or Terms of Use, hyperlink is similarly located at the bottom of the screen on each of the four Brand Websites, as shown in the images below:



*esteelauder.com footer*



*toofaced.com footer*



*smashbox.com footer*



*bobbibrowncosmetics.com footer*

86.     In further contravention of BIPA, upon information and belief, Defendants have failed to craft a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from their website users, including Plaintiffs and Class members.

87.     Defendants also fail to make any such policy, retention schedule, or guidelines publicly available, in contravention of the statute.

88.     Finally, upon information and belief, Defendants have not created such a policy retention schedule, or guidelines, and therefore Defendants do not follow, adhere to, or otherwise abide by any such policy establishing a retention schedule and guidelines for destroying biometric identifiers or biometric information obtained from their website users.

## CLASS ACTION ALLEGATIONS

89.     Plaintiffs bring this action as a class action pursuant to Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of a class defined as:

> All persons whose biometric identifiers were captured by Defendants through use of the Virtual Try-On tool on Defendants' Brand Websites: esteelauder.com, toofaced.com, smashbox.com, and bobbibrowncosmetics.com; while residing in Illinois, from five years preceding the date of the filing of this action to the present.

90.     Excluded from the Class are Defendants and any of their members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the Court staff assigned to this case and their immediate family members. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

91.     This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

92.     **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The proposed Class is sufficiently numerous that individual joinder of all Class members is impracticable. While Plaintiffs believe that there are not less than one hundred thousand (100,000) Class members, the precise number of Class members is presently unknown to Plaintiffs, but may be ascertained from Defendant's books, records, and electronically stored information. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

93.     **Commonality and Predominance—Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class members, including, without limitation:

      a.     Whether Defendants qualify as a "private entity" as defined by 740 Ill. Comp. Stat. 14/10;

      b.     Whether Defendants capture, collect, store, otherwise obtain, or distribute information that qualifies as "biometric information" or "biometric identifiers" of users of the Virtual Try-On tool on the Brand Websites, as defined by 740 Ill. Comp. Stat. 14/10 and 740 Ill. Comp. Stat. 14/15, *et seq.*;

      c.     Whether Defendants developed, made publicly available, or complied with, a written policy establishing a retention schedule and guidelines for destroying their Virtual Try-On tool users' biometric information and biometric identifiers on each of the Brand Websites, as 740 Ill. Comp. Stat. 14/15(a) requires;

d. Whether Defendants obtained an executed written release from each user of the Virtual Try-On tools on each of the Brand Websites before capturing their biometric information and biometric identifiers, as 740 Ill. Comp. Stat. 14/15(b) requires;

e. Whether Defendants, previously or on an ongoing basis, collected, captured, purchased, received through trade, or otherwise obtained the Brand Websites users' biometric identifiers or biometric information through the Virtual Try-On tool on the Brand Websites, in violation of 740 Ill. Comp. Stat. 14, *et seq*.;

f. Whether Defendants sold, leased, traded, or otherwise profited from Virtual Try On tool users' biometric identifiers or biometric information;

g. Whether Defendants' conduct was and is willful, reckless, or negligent;

h. The appropriate measure of damages to award Plaintiffs and Class members; and

i. The appropriate injunctive relief to which Plaintiffs and Class members are entitled.

94. **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of Class members' claims because Plaintiffs and each Class member used the same Virtual Try-On tool on Defendants' Brand Websites, through which Defendants collected, captured, purchased, received through trade, or otherwise obtained their biometric identifiers or biometric information, and did not inform Plaintiffs or Class members of such collection, capture, purchase, receiving through trade, or otherwise obtaining of such biometric identifiers or biometric information, and did not obtain written consent for this same capture, collection, purchase, receiving through trade, or otherwise obtaining of biometric information or biometric identifiers from Plaintiffs or Class members.

95. **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of Class members who they seek to represent, Plaintiffs have retained counsel competent and experienced in complex class action litigation, including successfully litigating class action

cases similar to this one, where a defendant breached statutory obligations, and Plaintiffs intend to vigorously prosecute this action. Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

96. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendants acted or refused to act on grounds generally applicable to Plaintiffs and Class members, thereby making appropriate final injunctive relief and/or declaratory relief, as described below.

97. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Violation of 740 Ill. Comp. Stat. 14/15(b)**
**(Failure to Inform in Writing and Obtain Written Release from Users Prior to Capturing, Collecting, or Storing Biometric Identifiers)**

98. Plaintiffs reassert, reallege, and incorporate by reference each of the allegations contained in the factual allegations above, as though asserted and alleged herein.

99. Plaintiffs bring this claim individually and on behalf of the Class members against all Defendants.

100. Defendants' Virtual Try-On technology captured—and continues to capture— Plaintiffs' and Class members' facial geometry information.

101.    Facial geometry is a biometric identifier protected by BIPA.

102.    BIPA prohibits private entities like Defendants from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining website users' biometric identifiers or biometric information without first informing them in writing of such activities; informing them in writing of the specific purpose and length of term for which biometric identifiers or biometric information are being collected, stored, and used; and obtaining a written release executed by the websites users whose biometric identifiers or biometric information is being collected.

103.    Defendants do not inform the Brand Websites' users in writing that their biometric information will be collected through the use of the Virtual Try-On tool; do not inform them in writing of the specific purpose and length of time that their biometric information will be collected, stored, and used; and do not obtain written consent from their customers, affirming that by using Defendants' Virtual Try-On tool, their biometric information and biometric identifiers will be collected.

104.    Upon information and belief, Defendants are continuing to collect, capture, and store biometric information and biometric identifiers of the Brand Websites' Virtual Try-On feature users, without the specific permission required by BIPA.

105.    Plaintiffs and Class members have been injured by Defendants' conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to Defendants' collection, capture, and storage of their biometric information and biometric identifiers, and the sharing of that data with third parties; accordingly, the imposition of statutory damages under BIPA is appropriate here.

## SECOND CAUSE OF ACTION
**Violation of 740 Ill. Comp. Stat. 14/15(a)**
**(Failure to Develop and Make Publicly Available a Written Policy for Retention and Destruction of Biometric Identifiers)**
**Damages and Injunctive Relief**

106. Plaintiffs reassert, reallege, and incorporate by reference each of the allegations contained in the factual allegations above, as though asserted and alleged herein.

107. Plaintiffs bring this claim individually and on behalf of Class members against all Defendants.

108. Defendants' Virtual Try-On tools operate by capturing the facial geometry of users of Defendants' Virtual Try-On tools, including Plaintiffs and Class members.

109. Facial geometry is a biometric identifier or biometric information, protected by BIPA.

110. BIPA requires private entities, like Defendants, in possession of biometric identifiers or biometric information to develop and comply with a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with the private entity, whichever occurs first.

111. Defendants did not develop, possess, or publish to the Brand Websites users—including Plaintiffs and Class members—such a written policy at any time during their capture, collection, or storage of Plaintiffs' and Class members' biometric information or biometric identifiers, which Defendants caused to be obtained through their use of the Virtual Try-On tool on Defendants' Brand Websites.

112.     Defendants did not follow, adhere to, or otherwise abide by a publicly-available written policy at any time during their capture, collection, or storage of Plaintiffs' and Class members' biometric information or biometric identifiers, which Defendants caused to be obtained through their use of the Virtual Try-On tools on Defendants' Brand Websites.

113.     As a result, Defendants denied Plaintiffs and Class members of their rights under BIPA to be made aware of Defendants' retention and destruction policies as to their biometric identifiers, and of their rights to have Defendants comply with BIPA's retention and destruction requirements. Additionally, Defendants' failure to develop the required retention and destruction policies placed Plaintiffs' and Class members' sensitive biometric identifiers at risk of compromise or illicit use by Defendants and others.

114.     Plaintiffs and Class members have been injured by Defendants' conduct, as alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, and violations of their privacy due to Defendants' collection, capture, and storage of their biometric information and biometric identifiers, and their sharing of that data with foreign companies; accordingly, the imposition of statutory damages under BIPA is appropriate here.

115.     Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. 14/20(4), requiring Defendants to develop a written policy, inform Plaintiffs and Class members of that policy, after ensuring that their information is destroyed, and abide by that policy in the future.

**THIRD CAUSE OF ACTION**
**VIOLATION OF 740 ILCS 14/15(c)**
**Prohibition Against Selling, Leasing, Trading, Or Otherwise Profiting From A Person's Biometric Identifiers Or Biometric Information**
**Damages and Injunctive Relief**

116.     Plaintiffs reassert, reallege, and incorporate by reference each of the allegations contained in the factual allegations above, as though asserted and alleged herein.

117.    Plaintiffs bring this claim individually and on behalf of Class members against all Defendants.

118.    Defendants, through the Virtual Try-On feature on the Brand Websites, collected, captured, or otherwise obtained Plaintiffs' and Class members' biometric identifiers, including facial geometry.

119.    Facial geometry is a biometric identifier protected by BIPA.

120.    Defendants were, and, on information and belief, currently still are, in possession of the biometric identifiers and biometric information collected, captured, or otherwise obtained by Defendants through the use of the Virtual Try-On feature on the Brand Websites.

121.    BIPA prohibits private entities, like Defendants, in possession of biometric identifiers or biometric information from selling, leasing, trading, or otherwise profiting from those biometric identifiers or biometric information.

122.    Defendants provide the Virtual Try-On feature on their Brand Websites in order to increase online sales of their makeup products.

123.    Defendants provide the Virtual Try-On feature on their Brand Websites as a way for potential customers to try makeup from Defendants' beauty brands on before they buy it.

124.    Defendants' potential customers are more likely to buy makeup from Defendants' beauty brands, if they can see what the products would look like on them first.

125.    It is the facial geometry scans collected, captured, or otherwise obtained by Defendants through use of Defendants' Virtual Try-On feature on the Brand Websites that allow for the proper placement of the makeup products on website users' faces, so the users can see how makeup products from Defendants' beauty brands look on them when worn.

126.    Upon information and belief, Defendants' makeup sales have increased since Defendants began offering the Virtual Try-On feature on the Brand Websites.

127.    As a result, Defendants violated BIPA by unlawfully selling, leasing, trading, or otherwise profiting from individuals' biometric identifiers and biometric information, including the biometric identifiers and information of Plaintiffs and Class members.

128.    Plaintiffs and Class members have been injured by Defendants' conduct alleged herein, which injury includes the unknowing loss of control of their most unique biometric identifiers, violations of their privacy due to Defendants' collection, capture, and storage of their biometric identifiers and biometric information, and violation of their rights in and ownership of their unique biometric identifiers and biometric information through Defendants' profiting from the same; accordingly the imposition of statutory damages under BIPA is appropriate here. Moreover, an injunction is warranted pursuant to 740 Ill. Comp. Stat. § 14/20(4), requiring Defendants to stop selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class members' biometric identifiers or biometric information.

## REQUEST FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of Class members, respectfully request that the Court enter an order granting the following relief:

a.    Finding that this action satisfies the requirements for maintenance as a class action as set forth in Rule 23 of the Federal Rules of Civil Procedure and certifying the class defined herein;

b.    Appointing Plaintiffs as representative of the Class and their undersigned counsel as class counsel;

c.      Entering judgment in favor of Plaintiffs and Class members and against Defendants;

d.      Awarding Plaintiffs and Class members liquidated damages of $1,000 per negligent violation, $5,000 per willful or reckless violation, or actual damages, whichever is greater, for each of Defendants' BIPA violations;

e.      Issuing an injunction ordering Defendants to comply with BIPA and to disclose to Plaintiffs and Class members whether Defendants possess their biometric identifiers or biometric information, Defendants' uses of their biometric information or biometric identifiers; and Defendants' retention and destruction policies regarding their biometric information or biometric identifiers;

f.      Issuing an injunction ordering Defendants to comply with BIPA by preparing, producing, or adopting a publicly published retention and destruction policy for the biometric information or biometric identifiers that they collects;

g.      Issuing an injunction ordering Defendants to comply with BIPA going forward by stopping selling, leasing, trading, or otherwise profiting from Plaintiffs' and Class members' biometric identifiers or biometric information;

h.      Awarding reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses, as provided for in 740 Ill. Comp. Stat. 14/20; and

i.      Granting such other and further relief as the Court deems appropriate.

## JURY TRIAL REQUESTED

Plaintiffs, individually and on behalf of Class members, request a trial by jury on all claims so triable.

Dated: October 18, 2022

Respectfully submitted,

*/s/Amy E. Keller*
AMY E. KELLER
akeller@dicellolevitt.com
NADA DJORDJEVIC
ndjordjevic@dicellolevitt.com
JAMES A. ULWICK
julwick@dicellolevitt.com
**DiCELLO LEVITT LLC**
Ten North Dearborn Street, Sixth Floor
Chicago, Illinois 60602
Telephone: (312) 214-7900

JAMES J. PIZZIRUSSO*
jpizzirusso@hausfeld.com
**HAUSFELD LLP**
888 16th Street, NW, Suite 300
Washington, D.C. 20006
Telephone: (202) 540-7200

STEVEN M. NATHAN*
snathan@hausfeld.com
KATHERINE HANSSON*
khansson@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, New York 10004
Telephone: (646) 357-1100

Don Bivens*
don@donbivens.com
**DON BIVENS PLLC**
Scottsdale Quarter
15169 North Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

***Counsel for Plaintiffs and the Proposed Class***

**Pro Hac Vice Admission Applications Forthcoming*