UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CELIA CASTELAZ; BRITTANIE NALLEY; NORTHA JOHNSON; and LORI CARTER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE ESTÉE LAUDER COMPANIES INC.; BOBBI BROWN PROFESSIONAL COSMETICS, INC.; ESTÉE LAUDER INC.; SMASHBOX BEAUTY COSMETICS, INC.; TOO FACED COSMETICS, LLC; and PERFECT CORP.,<br><br>        Defendants. | Case No. 1:22-cv-05713<br><br>Hon. Lindsay C. Jenkins |

**ELC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' CORRECTED FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

      Page

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND .............................................................................................................................. 2

ARGUMENT ..................................................................................................................................... 3

I.    LEGAL STANDARD ............................................................................................................ 3

II.   PLAINTIFFS FAIL TO STATE A BIPA CLAIM BECAUSE THEY DO NOT PLAUSIBLY ALLEGE THAT ELC IS CAPABLE OF IDENTIFYING THEM USING THE PURPORTEDLY COLLECTED DATA. ....................................................... 4

    A.    To Qualify as a "Biometric Identifier" or "Biometric Information," Data Must Be Capable of Identifying or of Being Used to Identify a Person. .......................... 4

    B.    Plaintiffs Do Not Plead that ELC Identified or Is Capable of Identifying Them. ...................................................................................................................... 7

    C.    Plaintiffs' Last-Ditch Reliance on ELC's New Privacy Policy for the Brand Websites Cannot Salvage the Complaint or Lend Plausibility to Plaintiffs' Facially Defective BIPA Claims. ........................................................................... 10

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR ENHANCED STATUTORY DAMAGES BASED ON INTENTIONAL OR RECKLESS CONDUCT. ...................... 11

CONCLUSION ................................................................................................................................ 13

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...................................................................................................... 3, 10

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ........................................................................................................ 3, 4

*Bell v. Petco Animal Supplies Stores, Inc.*,
　No. 1:22-cv-6455 (N.D. Ill. May 11, 2023) ..................................................................... 7, 9

*Carpenter v. McDonald's Corp.*,
　580 F. Supp. 3d 512 (N.D. Ill. 2022) .................................................................................. 4

*Colombo v. YouTube, LLC*,
　No. 3:22-cv-6987, 2023 WL 4240226 (N.D. Cal. June 28, 2023) ....................................... 7

*Daichendt v. CVS Pharmacy, Inc.*,
　No. 1:22-cv-3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ("*Daichendt I*") .......... *passim*

*Daichendt v. CVS Pharmacy, Inc.*,
　No. 1:22-cv-3318, 2023 WL 3559669 (N.D. Ill. May 4, 2023) ("*Daichendt II*") ............... 7, 10

*Daichendt v. CVS Pharmacy, Inc.*,
　No. 1:22-cv-3318, 2023 WL 3579082 (N.D. Ill. Feb. 3, 2023) ........................................... 8

*Gamez v. VF Corp.*,
　No. 2:18-cv-6246, 2018 WL 6333560 (C.D. Cal. Nov. 21, 2018) ..................................... 11

*Heard v. Becton, Dickinson & Co.*,
　440 F. Supp. 3d 960 (N.D. Ill. 2020) .................................................................................. 4

*Hecker v. Deere & Co.*,
　556 F.3d 575 (7th Cir. 2009) ............................................................................................. 11

*In re I80 Equip., LLC*,
　938 F.3d 866 (7th Cir. 2019) ............................................................................................... 7

*Jacobs v. Hanwha Techwin Am., Inc.*,
　No. 1:21-cv-866, 2021 WL 3172967 (N.D. Ill. July 27, 2021) ........................................... 4

*Kraft, Inc. v. Edgar*,
　561 N.E.2d 656 (Ill. 1990) .................................................................................................. 5

*Kukovec v. Estée Lauder Cos.*,
    No. 1:22-cv-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ................................. 2, 12, 13

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ........................................................................................... 3

*Namuwonge v. Kronos, Inc.*,
    418 F. Supp. 3d 279 (N.D. Ill. 2019) ......................................................................... 12, 13

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ......................................................................................... 12

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ............................................................................. 4

*Rosenbach v. Six Flags Ent. Corp.*,
    129 N.E.3d 1197 (Ill. 2019) ............................................................................................. 6

*Svoboda v. Frames for Am., Inc.*,
    No. 1:21-cv-5509, 2022 WL 4109719 (N.D. Ill. Sept. 8, 2022) ....................................... 5

*W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*,
    183 N.E.3d 47 (Ill. 2021) ................................................................................................. 6

*Warmack-Stillwell v. Christian Dior, Inc.*,
    No. 1:22-cv-4633, 2023 WL 1928109 (N.D. Ill. Feb. 10, 2023) ..................................... 5

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
    2021 IL App (1st) 210279 ................................................................................................ 6

**STATUTES**

Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ..................................... *passim*

740 ILCS § 14/5(c) ................................................................................................................. 6, 7

740 ILCS § 14/5(g) ..................................................................................................................... 6

740 ILCS § 14/10 .................................................................................................................... 6, 7

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 3

Defendants The Estée Lauder Companies Inc., Bobbi Brown Professional Cosmetics, Inc., Estée Lauder Inc., Smashbox Beauty Cosmetics, Inc., and Too Faced Cosmetics, LLC (collectively, "ELC") respectfully submit this brief in support of their motion to dismiss Plaintiffs' Corrected First Amended Class Action Complaint dated June 26, 2023 (ECF No. 32) ("Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs erroneously assert violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq*. ("BIPA"), based on certain features on four ELC websites (collectively, the "Brand Websites"). The Brand Websites incorporate a technology from Defendant Perfect Corp. ("Perfect") that allows users to try on cosmetic products virtually by uploading a photo or using a computer or mobile device camera. After voluntarily using these virtual try-on features (the "VTOs") on the Brand Websites multiple times in 2021 and early 2022, Plaintiffs now contend that the VTOs "captured, collected, used, possessed, and/or otherwise obtained" scans of Plaintiffs' facial geometries without their consent. Plaintiffs seek to represent a putative class of Illinois residents who used the VTOs on the Brand Websites, asserting claims under BIPA against ELC and Perfect. Plaintiffs' 40-page Complaint is replete with BIPA buzzwords and legal conclusions, but fails to allege facts sufficient to state a plausible BIPA claim. These facial defects are incurable, as the simple reality is that the VTOs run fully locally on users' devices and do not capture, collect, use, possess, or otherwise obtain any biometric identifiers or information.

The Court should dismiss the Complaint for two reasons. First, BIPA applies only to "biometric identifiers" and "biometric information," both of which necessarily must be capable of identifying or of being used to identify an individual. But the Complaint alleges no facts to plausibly establish that the VTOs' purported collection of data made ELC capable of determining Plaintiffs' identities. BIPA therefore covers none of the data described in the Complaint. Indeed,

by failing to plead that such data provides ELC with the capability to identify Plaintiffs, the Complaint lacks the "most foundational aspect of a BIPA claim." *Daichendt v. CVS Pharmacy, Inc.*, No. 1:22-cv-3318, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) ("*Daichendt I*"). The Complaint should be dismissed in its entirety for this reason alone.

Second, even if Plaintiffs had plausibly alleged that ELC is capable of identifying them using the purportedly collected data, Plaintiffs' claims for $5,000 in statutory damages per BIPA violation should still be dismissed because the Complaint alleges no facts from which this Court could reasonably infer that ELC's purported conduct was intentional or reckless. In fact, in a separate putative BIPA class action against Estée Lauder Companies Inc. in this District, the court dismissed the plaintiff's claim for such statutory damages for precisely this reason. *See Kukovec v. Estée Lauder Cos.*, No. 1:22-cv-1988, 2022 WL 16744196, at *8 (N.D. Ill. Nov. 7, 2022). Additionally, any inference that ELC intentionally or recklessly violated BIPA would be particularly unreasonable here because the Complaint expressly alleges that "in licensing the VTOs from Perfect, [ELC] and Perfect agreed to comply with all applicable data protection, privacy and security laws, including BIPA." Compl. ¶ 81.

For these reasons, as explained further below, the Court should grant ELC's motion and dismiss the Complaint in its entirety, with prejudice.

## BACKGROUND

Plaintiffs Celia Castelaz, Brittanie Nalley, Lori Carter, and Northa Johnson bring this lawsuit on behalf of themselves and a putative class of other Illinois residents for alleged violations of BIPA. *Id.* ¶¶ 22-28, 114. All of Plaintiffs' claims arise out of their voluntary use of the VTOs on the Brand Websites on several occasions in 2021 and early 2022. *Id.* ¶¶ 33, 38, 43, 48. Plaintiffs allege that the VTOs allow Brand Website visitors to virtually "try on" different cosmetic products

by either uploading an existing photo or by using a computer or mobile device camera. *Id.* ¶¶ 10-11, 89-96. The VTOs operate on the Brand Websites using Perfect's YouCam technology. *Id.* ¶ 13.

Plaintiffs assert three BIPA claims against ELC. First, Plaintiffs assert that ELC violated BIPA § 15(b) because the VTOs purportedly "captured, collected, used, possessed, and/or otherwise obtained" scans of Plaintiffs' facial geometries without their consent. *Id.* ¶¶ 22, 24, 26, 97-99, 123-130. Second, Plaintiffs assert that ELC violated BIPA § 15(a) by allegedly failing to establish or comply with a publicly available written retention schedule and destruction policy relating to biometric identifiers and biometric information. *Id.* ¶¶ 20, 25, 27, 108-110, 131-140. Third, Plaintiffs assert that ELC violated BIPA § 15(c) by allegedly "selling, leasing, trading, or otherwise profiting" from Plaintiffs' biometric identifiers and biometric information in that the VTOs have purportedly increased ELC's "online sales" of its cosmetic products. *Id.* ¶¶ 141-154. Plaintiffs request statutory damages on each of these claims against ELC. *Id.* ¶¶ 28, 130, 139, 154; *id.* at Request for Relief, ¶ (d).

## ARGUMENT

**I.      LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss should be granted where the complaint fails to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible only if the complaint contains sufficient "factual content" for the Court to reasonably infer that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678; *see also McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (complaint must contain at least "some specific facts" to support the claims).

In determining whether a claim is facially plausible, the Court need not accept as true the complaint's legal conclusions, threadbare recitals of the elements of a claim, or other conclusory allegations. *See Iqbal*, 556 U.S. at 678-80 ("[Rule 8(a)] does not unlock the doors of discovery for

3

a plaintiff armed with nothing more than conclusions."). A complaint that lacks sufficient facts to cross the line "from conceivable to plausible" must be dismissed. *Twombly*, 550 U.S. at 570; *see also Jacobs v. Hanwha Techwin Am., Inc.*, No. 1:21-cv-866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (dismissing BIPA complaint that did not allege "specific facts to ground plaintiff's legal claims" (alteration omitted)); *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966-68 (N.D. Ill. 2020) (dismissing BIPA complaint where plaintiff "merely parrot[ed]" BIPA's statutory language without "alleging how, when, or any other factual detail" regarding the purported collection or possession of biometric data).

## II. PLAINTIFFS FAIL TO STATE A BIPA CLAIM BECAUSE THEY DO NOT PLAUSIBLY ALLEGE THAT ELC IS CAPABLE OF IDENTIFYING THEM USING THE PURPORTEDLY COLLECTED DATA.

The Complaint should be dismissed because it does not allege facts to plausibly establish that ELC is capable of determining Plaintiffs' identities using the data purportedly collected by the VTOs. This omission is fatal to all of Plaintiffs' claims because BIPA applies only to "biometric identifiers" and "biometric information"—categories that only include data that is capable of identifying or of being used to identify a person.

### A. To Qualify as a "Biometric Identifier" or "Biometric Information," Data Must Be Capable of Identifying or of Being Used to Identify a Person.

BIPA governs the collection and possession of "biometric identifiers" and "biometric information." As the courts of this District have repeatedly held, to implicate BIPA, a "biometric identifier" must be capable of identifying a person. *See Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) ("[A] biometric identifier is a unique personal feature that **can be used to identify a person**." (emphasis added)); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) ("biometric identifier" means "a biology-based set of measurements ('biometric') that **can be used to identify a person** ('identifier')" (emphasis added)).

4

These cases accurately capture both the plain meaning and the statutory meaning of "biometric identifier" and "biometric information." Illinois courts will look to dictionary definitions to determine a term's plain and ordinary meaning. *See, e.g.*, *Warmack-Stillwell v. Christian Dior, Inc.*, No. 1:22-cv-4633, 2023 WL 1928109, at *3-4 (N.D. Ill. Feb. 10, 2023) (dismissing BIPA claim and determining meaning of statute's terms "from dictionary definitions"); *Svoboda v. Frames for Am., Inc.*, No. 1:21-cv-5509, 2022 WL 4109719, at *2-3 (N.D. Ill. Sept. 8, 2022) (dismissing BIPA claims and explaining that "[d]ictionary definitions may be consulted when considering the plain and ordinary meaning of a term").

The ordinary meaning of "biometrics" is "the measurement and analysis of unique physical or behavioral characteristics (such as fingerprint or voice patterns) especially as a means of verifying personal identity." *Merriam-Webster Dictionary*, "Biometrics," http://www.merriam-webster.com (last accessed Aug. 25, 2023). The ordinary meaning of "identifier" is "one that identifies"—*i.e.*, "to perceive or state the identity of (someone or something)." *Id.*; *see also Collins Dictionary*, "Identifier" and "Identify," http://www.collinsdictionary.com (last accessed Aug. 25, 2023) ("a person or thing that establishes the identity of someone or something;" and "[i]f you can identify someone or something, you are able to recognize them or distinguish them from others"); *American Heritage Dictionary*, "Identify," http://www.ahdictionary.com (last accessed Aug. 25, 2023) ("To establish or recognize the identity of; ascertain as a certain person or thing[.]").

A "biometric identifier," therefore, must actually be capable of identifying a person. To conclude otherwise would render the word "identifier" meaningless, which conflicts with well-established rules of statutory construction. *See, e.g.*, *Kraft, Inc. v. Edgar*, 561 N.E.2d 656, 661 (Ill. 1990) ("A statute should be construed so that no word or phrase is rendered superfluous or meaningless.").

5

This also comports with the statutory meaning of "biometric information" under BIPA. The statute expressly defines "biometric information" to mean "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's **biometric identifier used to identify** an individual." 740 ILCS § 14/10 (emphasis added); *see also* Compl. ¶ 68 (same). The "used to identify" limitation, and its specific linkage to the plain meaning of "biometric identifier" as something capable of identifying a person, is necessary to ensure that "biometric identifier" and "biometric information" only encompass information that can be used to identify a person. *See also supra* at 5 (dictionary definitions of "identify").

This plain and ordinary understanding of BIPA as regulating only data that can identify or be used to identify a person is also consistent with the statute's stated purpose. BIPA recognizes that biometrics are "biologically unique to the individual" and present "heightened risk for identity theft." Thus, the "public welfare, security, and safety will be served by regulating . . . biometric identifiers and information." 740 ILCS §§ 14/5(c), (g); *see also* Compl. ¶¶ 64-66 (same); *Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279, ¶ 64 (explaining that the "primary impetus behind the bill was to" provide protections for "people who had provided their biometric data **for use as identifiers**" (emphasis added)).

In short, BIPA's protections exist precisely and solely to protect data that is capable of identifying or of being used to identify a person. *See, e.g.*, *Rosenbach v. Six Flags Ent. Corp.*, 129 N.E.3d 1197, 1206-07 (Ill. 2019) (BIPA protects a "privacy right[]" in an individual's "unique" identifying information); *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 58 (Ill. 2021) (BIPA "protects a secrecy interest—here, the right of an individual to keep his or her personal identifying information like fingerprints secret"). If the data associated

6

with a defendant's purported conduct cannot identify or be used to identify the plaintiff, BIPA does not and cannot apply.[1]

### B. Plaintiffs Do Not Plead that ELC Identified or Is Capable of Identifying Them.

Because BIPA regulates only "biometric identifiers" and "biometric information," a complaint must plausibly allege that the relevant technology's collection of data made the defendants capable of determining plaintiffs' identities. *See, e.g.*, *Daichendt I*, 2022 WL 17404488, at *5 (dismissing BIPA claims where the complaint did not plead that the "collection of [plaintiffs'] biometric data made defendant capable of determining their identities" (emphasis omitted)); *Daichendt v. CVS Pharmacy, Inc.*, No. 1:22-cv-3318, 2023 WL 3559669, at *1 (N.D. Ill. May 4, 2023) ("*Daichendt II*") (explaining that the "relevant inquiry" is whether the "collected data makes defendant capable of identifying plaintiffs"); Declaration of Gregory E. Ostfeld (Aug. 25, 2023) ("Ostfeld Decl."), Ex. A, *Bell v. Petco Animal Supplies Stores, Inc.*, No. 1:22-cv-6455 (N.D. Ill. May 11, 2023), at 4 (explaining that "[w]hat matters" under BIPA is "whether the data that [defendant] gathered was capable of identifying" plaintiffs).

---

[1] An outlier, out-of-circuit opinion by the Northern District of California, *Colombo v. YouTube, LLC*, No. 3:22-cv-6987, 2023 WL 4240226 (N.D. Cal. June 28, 2023), recently construed "biometric identifier" in isolation and contrary to its plain meaning and context, holding that it encompasses any "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," regardless of whether such data can actually be used to identify a person. *Id*. at *3-4. That analysis is unpersuasive and clearly erroneous. The Illinois General Assembly clearly did not intend to divorce the statutory term "biometric identifier" from the plain meaning of "identifier." Such a construction would require the Court to ignore the very next sentence of the same provision, defining "biometric information" as information "based on an individual's biometric identifier used to identify an individual." 740 ILCS § 14/10. It also ignores the statute's express concern with preventing "identity theft." 740 ILCS § 14/5(c). "As the Illinois Supreme Court has explained: 'A court must view the statute as a whole, construing words and phrases in light of other relevant statutory provisions and not in isolation. Each word, clause, and sentence of a statute must be given a reasonable meaning, if possible, and should not be rendered superfluous.'" *In re I80 Equip., LLC*, 938 F.3d 866, 870 (7th Cir. 2019) (quoting *People v. Perez*, 18 N.E.3d 41, 44 (Ill. 2014)). The construction in *Colombo* ignores and renders superfluous the word "identifier" in "biometric identifier," isolates the definition of "biometric identifier" from the rest of the statute, and further ignores and fails to give reasonable meaning to the immediately surrounding phrase "based on an individual's biometric identifier used to identify an individual." It should be given no weight, and the Court should instead apply the well-reasoned contrary decisions of this District.

Judge Gettleman's decision in *Daichendt I* is instructive. There, the plaintiffs alleged that CVS violated BIPA when its passport photo system scanned digital photographs for biometric identifiers to determine whether the photographs complied with governmental passport requirements. *Id.* at *1. Specifically, plaintiffs alleged that after a photo was taken of them by CVS, consumers would receive a verification certificate confirming "a scan of facial geometry was performed to confirm" that the image had the correct size, width/height ratio, head size, position of the head, color brightness, color balance, eyes opened and looking straight ahead, mouth closed, no eye glasses, no glare, and a proper facial position. *Id.*

In dismissing the complaint, Judge Gettleman held that the plaintiffs failed to meet their burden of providing "specific factual allegations" to plausibly establish that the passport photo system's "collection of their biometric data made [CVS] capable of determining their identities." *Id.* at *5 (emphasis omitted). In so holding, Judge Gettleman explained:

> [The] plaintiffs do not plead that defendant, in fact, "used" their biometric data to determine their identities. They also do not plead that defendant could do so. Plaintiffs do not allege that they provided defendant with any information, such as their names or physical or email addresses, that could connect the voluntary scans of face geometry with their identities. Thus, plaintiffs have failed to plead the **most foundational** aspect of a BIPA claim.

*Id.* (emphasis added).[2]

So too here. Plaintiffs do not plead that ELC in fact used the data purportedly collected by the VTOs to identify Plaintiffs. Nor do Plaintiffs allege any facts to plausibly establish that the VTOs' purported collection of data made ELC capable of determining Plaintiffs' identities. The Complaint nowhere alleges that Plaintiffs provided ELC with any real-world identifying

---

[2] On a motion for reconsideration, Judge Gettleman modified *Daichendt I* to the extent that it dismissed plaintiffs' BIPA claims "without expressly granting leave to file an amended complaint." *Daichendt v. CVS Pharmacy, Inc.*, No. 1:22-cv-3318, 2023 WL 3579082, at *1 (N.D. Ill. Feb. 3, 2023).

8

information, such as their names or email addresses, that could connect the VTOs' alleged facial scans to Plaintiffs' identities. Nor does the Complaint allege that Plaintiffs were required to provide any such information in connection with using the VTOs. That is because they need not and can experience a session with the VTOs entirely anonymously.[3]

Plaintiffs' failure to allege that they provided ELC with any real-world identifying information also makes the Complaint here unlike cases that have distinguished *Daichendt I*. For example, in *Bell v. Petco Animal Supplies*—after affirming *Daichendt I's* holding that "[w]hat matters" under BIPA is "whether the data that [defendant] gathered was capable of identifying" plaintiffs—Judge Shah allowed the BIPA claims to proceed because, unlike in *Daichendt I*, the plaintiffs, who were former Petco employees, alleged that Petco "had access to their names" and employee numbers, and, therefore, it was "reasonable to infer" that Petco was capable of using such information "to connect [the] biometric identifiers [collected] with plaintiffs' identities." Ostfeld Decl. Ex. A at 4 & nn.5-6. The Complaint here, by contrast, is devoid of any allegation that Plaintiffs provided ELC with any information that could connect the VTO sessions to Plaintiffs' identities.

Unable to plausibly allege that ELC was capable of identifying Plaintiffs, the Complaint baselessly alleges that the VTOs' purported collection of facial geometry scans "can be used to identify the VTO user." Compl. ¶ 85. But this lone, conclusory allegation does not satisfy the facial plausibility standard for two reasons. First, the allegation is supported by no well-pled facts and

---

[3] ELC recognizes that Plaintiffs may have intentionally chosen not to plead facts relating to their interactions with ELC in order to obscure the potential application of the mandatory arbitration, class action waiver, and New York choice-of-law provisions in the Brand Websites' respective terms and conditions. Plaintiffs, however, cannot have it both ways—they are either ELC's customers subject to the Brand Websites' terms and conditions, or they are strangers to ELC, and ELC had no awareness of their identities when their data was purportedly collected. In filing this motion, ELC reserves its right to enforce the Brand Websites' terms and conditions, including the arbitration, class action waiver, and choice-of-law provisions thereof, should ELC discover that a Plaintiff assented to or is otherwise bound by those terms and conditions.

9

necessarily should not be considered in determining whether the Complaint states a plausible BIPA claim. *See Iqbal*, 556 U.S. at 678. Second, the allegation's generic reference to "the VTO user" says nothing about whether the VTOs' purported data collection made ELC capable of determining **Plaintiffs'** identities, as is required. *See, e.g.*, *Daichendt I*, 2022 WL 17404488, at *5 ("[P]laintiffs must allege that defendant's collection of their biometric data made defendant capable of determining **their** identities." (emphasis added)); *Daichendt II*, 2023 WL 3559669, at *1 (the "relevant inquiry" is whether the "collected data makes defendant capable of identifying **plaintiffs**" (emphasis added)). That omission is no accident. As Plaintiffs are well aware, the VTOs operate locally on users' devices and nothing in their operation made ELC capable of determining Plaintiffs' identities. Because Plaintiffs cannot plead otherwise, they use conclusory assertions in lieu of factual allegations in an attempt to evade their obligation to plead a facially plausible claim under BIPA.

In short, by failing to plead that ELC identified or is capable of identifying Plaintiffs using the data purportedly collected by the VTOs, the Complaint lacks the "most foundational aspect of a BIPA claim" and should be dismissed in its entirety.

> C. **Plaintiffs' Last-Ditch Reliance on ELC's New Privacy Policy for the Brand Websites Cannot Salvage the Complaint or Lend Plausibility to Plaintiffs' Facially Defective BIPA Claims.**

Unable to plausibly allege that ELC is capable of identifying them, Plaintiffs point to ELC's new privacy policy covering the entirety of the Brand Websites (not just the VTOs), and which went into effect "well after" Plaintiffs filed this action in October 2022, falsely characterizing it as an admission of biometric information collection in violation of BIPA. Compl. ¶¶ 21, 107. ELC's privacy policy is nothing of the sort. ELC's general disclosure that it "**may**" collect unspecified biometric information on its Brand Websites as a whole, from unspecified individuals, in connection with unspecified encounters with the Brand Websites, falls short even

of conjecture, let alone an acknowledgement that the VTOs **do** all collect biometric information in violation of BIPA. The Court should categorically reject Plaintiffs' desperate attempt to paint ELC's privacy policy as an admission of any kind, much less a specific admission with respect to the VTOs.

At most, ELC's privacy policy indicates a possibility of biometric data collection somewhere within the broad umbrella of use of the Brand Websites, not the actual collection of such data in the use of the VTOs. Indeed, ELC's privacy policy says nothing about even the potential—much less actual—collection of Plaintiffs' biometric information when engaging with the VTOs or that any such collection of data can be used by ELC to determine Plaintiffs' actual identities. *See* Ostfeld Decl., Ex. B (ELC's United States Privacy Policy, last updated Apr. 21, 2023).[4] Nor does the privacy policy say anything about the specific VTOs at issue in this case or that ELC has a broader practice of collecting biometric information. *See id.* ELC's privacy policy is no different than in *Gamez v. VF Corp.*, where the court found that defendant's "privacy policy alone cannot give rise to a reasonable inference that Defendant shared Plaintiff's personal information," particularly where the policy "says only that Defendant *may* share personal information, not that it has a practice of doing so, and certainly not that it shared *Plaintiff's* information." No. 2:18-cv-6246, 2018 WL 6333560, at *3 (C.D. Cal. Nov. 21, 2018). The same reasoning applies here. ELC's new privacy policy does not render Plaintiffs' claims plausible.

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR ENHANCED STATUTORY DAMAGES BASED ON INTENTIONAL OR RECKLESS CONDUCT.

Even if Plaintiffs had plausibly alleged that ELC is capable of determining Plaintiffs' identities using the data purportedly collected by the VTOs (and they have not), Plaintiffs' claims

---

[4] The Court may take into consideration ELC's privacy policy on a motion to dismiss because it is a document incorporated by reference in the Complaint. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009).

11

for $5,000 in statutory damages per BIPA violation should be dismissed because Plaintiffs fail to plead that ELC's purported conduct was intentional or reckless. Instead, Plaintiffs merely make a boilerplate request for statutory damages of "$5,000 per willful or reckless violation," Compl. at Request for Relief, ¶ (d), and allege that whether ELC's purported conduct was "willful, reckless, or negligent" is a "common question[] of law and fact," *id.* ¶ 118(g). This is not enough. Although states of mind may be "pleaded generally," a complaint must contain factual "details" sufficient to render the state of mind at issue plausible. *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (citing *Pippen* and dismissing enhanced BIPA statutory damages claim); *Kukovec*, 2022 WL 16744196, at *8 (same).

*Kukovec* is directly on point. There, in dismissing the plaintiff's claim for $5,000 in statutory damages per BIPA violation, Judge Shah held that the complaint lacked sufficient "details" to show that Estée Lauder Companies Inc.'s purported conduct was intentional or reckless, as is required to state a claim for enhanced statutory damages. *Kukovec*, 2022 WL 16744196, at *8. In so holding, the court explained that the complaint did not "mention defendant's state of mind" except "where [it] requests statutory damages" and contains "no other facts [that] point to recklessness or intent." *Id.*

Here, too, Plaintiffs allege no facts concerning ELC's state of mind or, frankly, any facts from which this Court could otherwise infer that ELC's purported conduct was intentional or reckless. To the contrary, Plaintiffs allege that, "in licensing the VTOs from Perfect, [ELC] and Perfect **agreed to comply** with all applicable data protection, privacy and security laws, **including BIPA**." Compl. ¶ 81 (emphasis added). This allegation alone establishes that ELC did not intentionally or recklessly violate BIPA.

12

Because the Complaint fails to plausibly allege that ELC's purported conduct was intentional or reckless, Plaintiffs' claims for $5,000 in statutory damages on a per BIPA violation basis should be dismissed. *See, e.g.*, *Namuwonge*, 418 F. Supp. 3d at 286; *Kukovec*, 2022 WL 16744196, at *8.

## CONCLUSION

For the foregoing reasons, ELC respectfully requests that the Court dismiss the Complaint in its entirety, with prejudice.

Dated: August 25, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld
Christopher A. Mair
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
ostfeldg@gtlaw.com
mairc@gtlaw.com

Sylvia E. Simson (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
sylvia.simson@gtlaw.com

*Attorneys for The Estée Lauder Companies Inc., Bobbi Brown Professional Cosmetics, Inc., Estée Lauder Inc., Smashbox Beauty Cosmetics, Inc., and Too Faced Cosmetics, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 25, 2023, the foregoing was filed using the Court's CM/ECF system, which provides notice of such filing to all counsel of record in this action.

/s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld