UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CELIA CASTELAZ; BRITTANIE NALLEY; NORTHA JOHNSON; and LORI CARTER, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>THE ESTÉE LAUDER COMPANIES INC.; BOBBI BROWN PROFESSIONAL COSMETICS, INC.; ESTÉE LAUDER INC.; SMASHBOX BEAUTY COSMETICS, INC.; TOO FACED COSMETICS, LLC; and PERFECT CORP.,<br><br>        Defendants. | Case No. 1:22-cv-05713<br><br>Hon. Lindsay C. Jenkins |

**ELC'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFFS' CORRECTED FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.    PLAINTIFFS' OPPOSITION CONFIRMS THEY FAILED TO ALLEGE THAT ELC COLLECTED DATA CAPABLE OF IDENTIFYING PLAINTIFFS AND THAT THE COMPLAINT SHOULD BE DISMISSED. ................................................. 2

    A.    Plaintiffs Fail to Plausibly Allege that the Data at Issue Qualifies as a "Biometric Identifier" under BIPA. ........................................................... 2

    B.    Plaintiffs Do Not Allege that ELC Is Capable of Identifying Them Using the Purportedly Collected Data. ............................................................ 5

    C.    Plaintiffs' Reliance on *Colombo* Cannot Salvage Their Claims. ........................... 7

    D.    Plaintiffs' Reliance on ELC's Privacy Policy Is Misplaced. ................................. 8

II.    PLAINTIFFS' OPPOSITION DOES NOT IDENTIFY A SINGLE ALLEGATION IN THE COMPLAINT SHOWING THAT ELC ACTED WITH INTENT OR RECKLESSNESS. ................................................................................................... 9

CONCLUSION .................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barnett v. Apple Inc.*,
 2022 IL App (1st) 220187 ................................................................................................10

*Bond v. United States*,
 572 U.S. 844 (2014) ..........................................................................................................3

*Burlinski v. Top Golf USA Inc.*,
 No. 1:19-cv-6700, 2020 WL 5253150 (N.D. Ill Sept. 3, 2020) .......................................10

*Carpenter v. McDonald's Corp.*,
 580 F. Supp. 3d 512 (N.D. Ill. 2022) ..............................................................................2, 3

*Chet's Vending Serv., Inc. v. Dep't of Revenue*,
 71 Ill.2d 38 (1978) .............................................................................................................4

*Colombo v. YouTube, LLC*,
 No. 3:22-cv-6987, 2023 WL 4240226 (N.D. Cal. June 28, 2023) ..................................7, 8

*Daichendt v. CVS Pharmacy, Inc.*,
 No. 1:22-cv-3318, 2022 WL 17404488 (N.D. Ill. Dec. 2, 2022) ("*Daichendt I*") ............5, 6

*Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. 7*,
 2020 IL 125062 ..................................................................................................................4

*Endencia v. Am. Psychiatric Ass'n.*,
 No. 1:19-cv-3161, 2019 WL 4934601 (N.D. Ill. Oct. 7, 2019), *aff'd*,
 2020 WL 6386595 (7th Cir. June 29, 2020) ...................................................................10

*Gamez v. VF Corp.*,
 No. 2:18-cv-6246, 2018 WL 6333560 (C.D. Cal. Nov. 21, 2018) ..................................8, 9

*Johnson v. Orkin, LLC*,
 556 F. App'x 543 (7th Cir. 2014) ....................................................................................10

*Kukovec v. Estée Lauder Cos.*,
 No. 1:22-cv-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022) ...................................1, 9

*In re Marriage of Zamudio & Ochoa*,
 2019 IL 124676 ..................................................................................................................4

*Namuwonge v. Kronos, Inc.*,
 418 F. Supp. 3d 279 (N.D. Ill. 2019) ...............................................................................10

*Nationstar Mortg. LLC v. Benavides*,
    2020 IL App (2d) 190681 ...................................................................................................3

*Rivera v. Google Inc.*,
    238 F. Supp. 3d 1088 (N.D. Ill. 2017) ........................................................................2, 3, 4

*Robinson v. Lake Ventures LLC*,
    No. 1:22-cv-6451, 2023 WL 5720873 (Sept. 5, 2023) (Jenkins, J.) .............................1, 3, 4, 6

*Watson v. Legacy Healthcare Fin. Servs., LLC*,
    2021 IL App (1st) 210279..................................................................................................5

*Webber v. Armslist LLC*,
    70 F.4th 945 (7th Cir. 2023) .............................................................................................9

**STATUTES**

740 ILCS § 14/5(c) .......................................................................................................................5

740 ILCS § 14/10................................................................................................................2, 3, 4, 5

740 ILCS § 14/15(e)(2)................................................................................................................4

ELC respectfully submits this reply in further support of its motion to dismiss ("Motion").[1]

## **PRELIMINARY STATEMENT**

Plaintiffs' opposition does not save the Complaint. To the contrary, it confirms that Plaintiffs' BIPA claims rest on the false premise that "biometric identifier" encompasses data that ***cannot*** be used to identify a person. That is contrary to the plain meaning of the term, BIPA's text, structure, and purpose, and recent precedent from this District. By its plain meaning, a "biometric identifier" must be capable of identifying a person. If the data ELC allegedly collected cannot identify Plaintiffs, it is not a "biometric identifier" and the Complaint must be dismissed.

In their opposition, Plaintiffs mischaracterize or ignore the arguments raised in ELC's Motion, erroneously rely on Judge Shah's decision in a case that Plaintiffs admit did not even raise the same principal question raised here,[2] and assert the Complaint need only allege that ELC has collected Plaintiffs' "face geometry" because BIPA lists "face geometry" as an example of a "biometric identifier"—a circular assertion supported by no factual allegations. Notably, Plaintiffs do not even address their failure to allege in the Complaint that the data at issue is capable of identifying Plaintiffs. As this Court recently confirmed, such allegations are necessary to state a BIPA claim. *See Robinson v. Lake Ventures LLC*, No. 1:22-cv-6451, 2023 WL 5720873, at *8 (Sept. 5, 2023) (Jenkins, J.) ("[T]he relevant inquiry is whether the data that is alleged to have been collected was itself capable of identifying Plaintiffs.").

---

[1] Capitalized terms not otherwise defined herein have the same meaning as in ELC's opening brief in support of its Motion dated August 25, 2023 [ECF No. 40]. "Br. __" citations refer to pages in ELC's opening brief. "Ex. __" citations refer to exhibits attached to the declaration of Gregory E. Ostfeld dated August 25, 2023 [ECF No. 41]. "Opp. __" citations refer to pages in Plaintiffs' corrected opposition to the Motion dated October 24, 2023 [ECF No. 58]. Unless otherwise noted, all emphasis is added.

[2] Plaintiffs cite *Kukovec v. Estée Lauder Cos.*, No. 1:22-cv-1988, 2022 WL 16744196 (N.D. Ill. Nov. 7, 2022), as a case involving "allegations similar to those" in Plaintiffs' Complaint whose import ELC is "[u]nable to avoid," Opp. at 1, yet in the same breath concede that the "primary argument in ELC's Motion" in this case was ***not*** before Judge Shah in *Kukovec*, *id.* at 1 n.2. Thus, ELC need not "avoid" *Kukovec* because it involved a different issue. Indeed, the only ruling from *Kukovec* relevant to ELC's Motion is Judge Shah's dismissal of plaintiff's claims for intentional or reckless BIPA violations. *See* § II, *infra*.

Plaintiffs' opposition further fails to identify a single allegation in the Complaint showing that ELC's purported conduct was intentional or reckless. Accordingly, at the very least, Plaintiffs' claims for enhanced statutory damages should be dismissed.

## ARGUMENT

**I. PLAINTIFFS' OPPOSITION CONFIRMS THEY FAILED TO ALLEGE THAT ELC COLLECTED DATA CAPABLE OF IDENTIFYING PLAINTIFFS AND THAT THE COMPLAINT SHOULD BE DISMISSED.**

    **A. Plaintiffs Fail to Plausibly Allege that the Data at Issue Qualifies as a "Biometric Identifier" under BIPA.**

It is undisputed that BIPA applies only to "biometric identifiers" and "biometric information." Br. at 4-7; Opp. at 2. "Biometric information" is defined as data "based on an individual's biometric identifier ***used to identify*** an individual." 740 ILCS § 14/10. As the Complaint does not plead that any data was used to identify Plaintiffs, they do not state a claim based on "biometric information." Instead, Plaintiffs' claims depend entirely on their assertion that "biometric identifier" encompasses data that ***cannot*** be used to identify a person. BIPA's text, structure, and purpose, as well as this District's precedent, establish the fallacy of this construction.

**Text**. The plain meaning of "biometric identifier" requires the data at issue to be capable of identifying a person. "Biometrics" means "the measurement and analysis of unique physical or behavioral characteristics . . . especially as a means of verifying personal identity." Br. at 5 (citing Merriam-Webster). "Identifier" means "one that identifies"—*i.e.*, "to perceive or state the identity of (someone or something)." *Id.* (citing Merriam-Webster and other dictionaries).

Courts construing BIPA in this District, ***including this Court***, have consistently applied this plain meaning to find that a "biometric identifier" must be capable of identifying a person. *See Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022) ("[A] biometric identifier is a unique personal feature that ***can be used to identify a person***."); *Rivera v. Google*

*Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017) (similar); *Robinson*, 2023 WL 5720873, at *7-8 (a "biometric identifier" must be "***capable of identifying Plaintiffs***"). Indeed, Plaintiffs' reinterpretation of "biometric identifier" to encompass data not capable of identifying a person would render "identifier" meaningless. *See Nationstar Mortg. LLC v. Benavides*, 2020 IL App (2d) 190681, ¶ 20 (statute should be construed so "no term is rendered . . . meaningless").

Contrary to Plaintiffs' assertions, Opp. at 4-10, they do not satisfy the requirement that a "biometric identifier" be capable of identifying someone merely by alleging the data at issue arguably falls within one of the examples of biometric identifier types listed in the statute, including—as relevant here—a scan of "face geometry." 740 ILCS § 14/10. As multiple courts have explained, BIPA "defines 'biometric identifier' by ***listing examples***, including 'a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry.'" *Carpenter*, 580 F. Supp. 3d at 515. But "[e]ach specific item on the list" still must "fit[] within the meaning of the term 'biometric identifier,' that is, a biology-based set of measurements ('biometric') that ***can be used to identify a person*** ('identifier')." *Rivera*, 238 F. Supp. 3d at 1094; *see also Bond v. United States*, 572 U.S. 844, 861-62 (2014) (finding that the meaning of items listed in a defined term is informed by the term's "ordinary meaning," particularly "when there is dissonance between that ordinary meaning and the reach of the definition").

An analysis of the "items" or "examples" listed under "biometric identifier" confirms the defined term's plain meaning requires a "biometric identifier" to be capable of identifying a person. The list includes "fingerprint," which is "an ink impression of the lines upon the fingertip taken ***for the purpose of identification***." *Merriam-Webster*, "Fingerprint," http://www.merriam-webster.com (last accessed Oct. 27, 2023). It also includes "voiceprint," which has been defined, "utilizing statutory text and dictionary definitions," as voice "data unique to an individual that

3

could be used to ***identify someone***." *Robinson*, 2023 WL 5720873, at *7. The other items listed, like scan of "face geometry," must likewise be construed according to the "general rule that words grouped in a list should be given related meaning." *Dynak v. Bd. of Educ. of Wood Dale Sch. Dist. 7*, 2020 IL 125062, ¶ 22. The shared meaning that unifies the examples listed in "biometric identifier" is the capability of identifying a person.³ Plaintiffs' construction, by contrast, seeks to expand BIPA's scope to VTO technology that does ***not*** use "biometrics" to "identify" anyone.

**Structure**. BIPA's structure corroborates the plain meaning of "biometric identifier." To complement BIPA's regulation of "biometric identifiers," the General Assembly added a category of derivative data called "biometric information," which is defined—in the sentence immediately after "biometric identifier"—to mean data "based on an individual's biometric identifier ***used to identify*** an individual." 740 ILCS § 14/10. The General Assembly added this term to ensure that whatever an entity may do in "manipulating a biometric identifier," the "resulting information is ***still*** covered by [BIPA] if that information ***can be used to identify*** the person." *Rivera*, 238 F. Supp. 3d at 1095. Thus, the "used to identify" limitation in "biometric information" is necessary to ensure that BIPA is confined to data capable of identifying someone. That limitation is unnecessary in "biometric identifier" because it is inherent in the term's plain meaning.

Underscoring this reading, BIPA later describes both "biometric identifiers" and "biometric information" as forms of "confidential and sensitive information," 740 ILCS § 14/15(e)(2), which is defined—in the same provision defining "biometric identifier" and "biometric information"—as "information that can be ***used to uniquely identify an individual*** or

---

³ Plaintiffs argue that "[i]t is only appropriate" for courts to "look to dictionary definitions" when a statutory term is undefined. Opp. at 7. But neither of the two cases on which Plaintiffs rely says anything of the sort. The first case stands for the unremarkable proposition that dictionaries may be consulted when a statutory term is undefined. *See In re Marriage of Zamudio & Ochoa*, 2019 IL 124676, ¶ 19. The second case makes no mention of dictionary definitions. *See Chet's Vending Serv., Inc. v. Dep't of Revenue*, 71 Ill.2d 38 (1978).

4

an individual's account or property." 740 ILCS § 14/10.

**Purpose**. BIPA's declared purpose confirms what the text and structure make clear. In enacting BIPA, the General Assembly sought to regulate "unique *identifiers*." 740 ILCS § 14/5(c); *see also Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 IL App (1st) 210279, ¶ 64 (the "primary impetus behind" BIPA was to protect "people who had provided their biometric data *for use as identifiers*"). The General Assembly could have sought to regulate mere "biometric data." But it chose to regulate "biometric identifiers" because it was concerned with "identity theft," 740 ILCS § 14/5(c), something that can be accomplished only with data that can identify a person.

### B. Plaintiffs Do Not Allege that ELC Is Capable of Identifying Them Using the Purportedly Collected Data.

ELC's Motion establishes that the Complaint should be dismissed because Plaintiffs do not allege that ELC's supposed collection of data using VTO tools made ELC capable of determining Plaintiffs' identities and thus lacks the "most foundational aspect of a BIPA claim." Br. at 7-10 (citing *Daichendt v. CVS Pharmacy, Inc.*, No. 1:22-cv-3318, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) ("*Daichendt I*")). As in *Daichendt I*, Plaintiffs do not allege they provided ELC with any real-world identifying information, such as their names or addresses, that could connect their alleged scans of face geometry to Plaintiffs' identities. Br. at 8-9. Nor does the Complaint allege how ELC could have identified Plaintiffs using the purportedly collected data. *Id.*

ELC does not contend "facial geometry" means "facial geometry coupled with" real-world identifying information, as Plaintiffs incorrectly assert. Opp. at 7. But Plaintiffs must allege facts to plausibly show *how*—whether through real-world identifying information or otherwise—the VTOs' purported collection of data made ELC capable of identifying Plaintiffs. The Complaint contains no such allegations and Plaintiffs identify none. Br. at 7-10.

Plaintiffs insist they need only allege that ELC collected "face geometry" because a "scan

5

of face geometry" is listed in BIPA as a type of "biometric identifier." Opp. at 1, 4-5, 8 (citing Compl. ¶¶ 37, 42, 47, 52, 78, 83-85). But, as discussed above, a "scan of face geometry" must actually be capable of identifying a person to qualify as a "biometric identifier" under BIPA. In any event, each of the cited allegations consists of factually unsubstantiated legal conclusions and labels that the Court should disregard. *See, e.g.*, *Jackson*, 2023 WL 5720873, at *1 n.2, *8 (disregarding "conclusory label" that data was a "voiceprint"). Just because Plaintiffs call the alleged VTO-collected data a "scan of face geometry" does not make it so.

Plaintiffs also summarily dismiss *Daichendt I* as "incorrect and unpersuasive." Opp. at 8. Plaintiffs offer no meaningful explanation as to why they believe Judge Gettleman's analysis is wrong. *Id*. Nor do Plaintiffs attempt to distinguish the allegations in *Daichendt I* from the allegations here. *Id.* They cannot, as the allegations are substantially similar. In any event, *Daichendt I*'s holding that the relevant inquiry is whether a complaint alleges that the purportedly collected data is capable of identifying plaintiffs has been confirmed by this Court and other courts in this District. *See Robinson*, 2023 WL 5720873, at *8; Br. at 7 (citing other cases).

In addition, Plaintiffs' failure to allege that they provided ELC with any information that could link the alleged scans of face geometry to Plaintiffs' identities differentiates their Complaint here from the cases distinguishing *Daichendt I* on its facts. In *Robinson*, workers at Fresh Thyme's distribution center alleged that Fresh Thyme violated BIPA by collecting plaintiffs' voiceprints, along with other identifying information (*e.g.*, name and worker identification number), in "workers' individual data files" as a "mandatory part of a worker's on-boarding." 2023 WL 5720873, at *1-4. The Complaint here, by contrast, is devoid of any allegation that ELC has any information that could connect Plaintiffs' voluntary VTO sessions to their identities.

*Daichendt I*, *Robinson*, and other cases in this District all confirm that Plaintiffs have not

met their burden to plausibly allege that the purportedly collected data makes ELC capable of identifying them. Notably, even assuming the VTOs collect the face data depicted in the following graphic, Compl. ¶ 17, the Complaint nowhere alleges how this anonymized data can identify any person, much less Plaintiffs individually.



By failing to plead that ELC is capable of identifying Plaintiffs, the Complaint lacks the "most foundational aspect of a BIPA claim" and should be dismissed in its entirety.

C.     **Plaintiffs' Reliance on *Colombo* Cannot Salvage Their Claims.**

Against all of the foregoing directly applicable case law in this District, Plaintiffs affirmatively cite one out-of-circuit BIPA case in their opposition—*Colombo v. YouTube, LLC*, No. 3:22-cv-6987, 2023 WL 4240226 (N.D. Cal. June 28, 2023)—as support for their argument that merely intoning the words "scan" and "face geometry" is sufficient to allege a "biometric identifier," regardless of whether the data can identify a person. Opp. at 9-10. But *Colombo* is an outlier and its analysis—divorced from the plain meaning of "biometric identifier" and BIPA's structure and purpose—is erroneous for the reasons set forth above and in the Motion. Br. at 7 n.1.

In any event, the allegations in *Colombo* only highlight the deficiencies in Plaintiffs' Complaint. In *Colombo*, a "***registered*** YouTube user" alleged that he had uploaded videos to "***his*** YouTube account" from which YouTube allegedly collected scans of his facial geometry. *Colombo*, 2023 WL 4240226, at *4; Second Am. Compl. ¶¶ 83-85, *Colombo v. YouTube, LLC*, No. 3:22-cv-6987 (N.D. Cal.), ECF No. 84 ("*Colombo* Compl."). Plaintiffs here are strangers to

ELC and used the VTOs anonymously. Br. at 9 n.3. Moreover, the complaint in *Colombo* alleged that YouTube's technology collected "information that can be used in identifying [plaintiff]," *Colombo* Compl. ¶ 84, and how such identification plausibly occurred. *Id.* ¶¶ 50-58 (technology "recognizes the individuals appearing in the video as persons who have already been identified and assigned a unique 'faceID' through a previous use of the tool"). Plaintiffs' conclusory allegations that ELC collected "face geometry" fall well short of such detailed allegations.

Plaintiffs allege no facts from which this Court could reasonably infer that the VTOs' purported collection of data made ELC capable of identifying Plaintiffs. Instead, Plaintiffs merely speculate that ELC collected scans of face geometry. *See* Opp. at 1, 4-5, 8 (citing Compl. ¶¶ 37, 42, 47, 52, 78, 83-85). This is not enough to state a plausible BIPA claim.

### D. Plaintiffs' Reliance on ELC's Privacy Policy Is Misplaced.

Cherry picking a single sentence and separate paragraph in ELC's 13-page privacy policy applicable to websites for ELC's entire "diverse portfolio" of more than ***20 brands***, Ex. B [ECF No. 41-2] at 2, Plaintiffs argue that ELC "admits" that it "***may*** collect biometrics" through "certain of its virtual try-on-applications." Opp. at 10-11 (citing Compl. ¶¶ 21, 107). The out-of-context statements on which Plaintiffs rely are not "admissions" or "specific" statements relating to this case, as Plaintiffs wrongly assert. Opp. at 10-11. The privacy policy contains generally applicable disclosures that ELC "***may*** collect" from unidentified persons 15 broad "types of information"—one of which is biometrics if persons use "certain" unspecified "virtual try-on applications" on unspecified websites in ELC's portfolio of brands. Ex. B [ECF No. 41-2] at 3.

Contrary to Plaintiffs' unsupported speculation, the privacy policy says nothing about a practice of collecting biometrics or the potential—much less actual—collection of ***Plaintiffs'*** biometrics or of ***anyone's*** biometrics using the specific VTOs at issue in this case on the four Brand Websites at issue in this case. That is not enough to save Plaintiffs' claims. *See Gamez v.*

8

*VF Corp.*, No. 2:18-cv-6246, 2018 WL 6333560, at *3 (C.D. Cal. Nov. 21, 2018) (holding that defendant's "privacy policy alone cannot give rise to a reasonable inference that Defendant shared Plaintiff's personal information . . . because it says only that Defendant *may* share personal information, not that it has a practice of doing so, and certainly not that it shared ***Plaintiff's*** information" (emphasis in original)).[4] Even crediting Plaintiffs' unsupported surmise that ELC's privacy policy "may" relate to the VTOs on the four Brand Websites at issue here, the facial plausibility standard requires Plaintiffs to allege more than a mere possibility that ELC collected biometrics. *See Webber v. Armslist LLC*, 70 F.4th 945, 966 (7th Cir. 2023) (affirming dismissal of complaint where "plaintiffs' interpretation of [website] disclaimers present[ed] only a sheer possibility" of a claim). In short, nothing in ELC's privacy policy salvages the Complaint.[5]

**II. PLAINTIFFS' OPPOSITION DOES NOT IDENTIFY A SINGLE ALLEGATION IN THE COMPLAINT SHOWING THAT ELC ACTED WITH INTENT OR RECKLESSNESS.**

Even if the Complaint were not subject to outright dismissal (though it is), ELC has established that Plaintiffs' claims for $5,000 in statutory damages per BIPA violation should be dismissed because the Complaint pleads no facts showing that ELC's purported conduct was intentional or reckless. Br. at 11-13. Plaintiffs first respond that they need not allege such facts because a request for statutory damages is a demand for relief. Opp. at 11-12. But *Kukovec*, which Plaintiffs mistakenly attempt to cite favorably on issues ***not*** raised by ELC's Motion, *id.* at 1 n.2, and which postdates Plaintiffs' cases, rejected this very argument. 2022 WL 16744196, at *7-8 (while intent or recklessness is "only relevant to plaintiff's request for damages," a complaint must

---

[4] Plaintiffs' attempt to distinguish *Gamez* on the basis that the complaint there did not include "factual allegations giving rise to a plausible inference" that defendant shared plaintiff's information, Opp. at 11 n.4, falls flat. Here, too, the Complaint contains no "factual allegations" that could give rise to a plausible claim.

[5] Plaintiffs' suggestion that they are entitled to discovery as to why ELC's privacy policy was updated several months after the filing of this action, Opp. at 10, is entirely unsupported. In fact, Plaintiffs do not cite a single case in their discussion of ELC's privacy policy. *Id.* at 10-11.

9

contain factual "details" sufficient to render that state of mind plausible); *see also Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (similar, dismissing enhanced damages).

Plaintiffs next argue, without reference to any allegations in the Complaint, that they allege intent or recklessness because BIPA was enacted 15 years ago. Opp. at 12 (citing *Burlinski v. Top Golf USA Inc.*, No. 1:19-cv-6700, 2020 WL 5253150, at *8 (N.D. Ill Sept. 3, 2020). *Burlinski* is inapposite. It involved allegations that an employer "intentionally collected employee fingerprints for purposes of maintaining a biometric timekeeping system," not the use of a novel VTO tool depicting the placement of cosmetics without user identification. 2020 WL 5253150, at *5. Moreover, unlike *Burlinski*, the Complaint here alleges that ELC and Perfect "***agreed to comply*** with all applicable data protection, privacy and security laws, ***including BIPA***." Compl. ¶ 81. As ELC argued, Br. at 2, 12, and Plaintiffs' opposition does not dispute, this allegation alone demonstrates ELC could not have intentionally or recklessly violated BIPA.

Plaintiffs do not cite a single allegation in the Complaint from which intent or recklessness could be inferred. Plaintiffs' enhanced statutory damages claims should be dismissed.

## **CONCLUSION**

For these reasons, the Complaint should be dismissed in its entirety, with prejudice.[6]

---

[6] Plaintiffs' boilerplate request for leave to amend, Opp. at 13-14, should be denied as futile because Plaintiffs' pleading defects are not curable. Plaintiffs cannot allege that they provided ELC with any real-world identifying information because, in providing such information, they necessarily would have assented to the Brand Websites' terms and conditions, including its mandatory arbitration, class action waiver, and New York choice-of-law provisions. *See, e.g.*, *Johnson v. Orkin, LLC*, 556 F. App'x 543, 545 (7th Cir. 2014) (affirming denial of leave to amend as futile where "arbitration agreements" precluded plaintiff from bringing claims in federal court). Further, they otherwise cannot allege facts to state a plausible BIPA claim because the VTOs run locally on users' own devices and do not capture, collect, use, possess, or otherwise obtain any biometric identifiers or biometric information. *See Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, ¶¶ 44, 50, 58 (dismissing BIPA claims where facial data remained on plaintiffs' "own devices"). Because Plaintiffs cannot cure these defects, and since this Court already granted them leave to amend the original complaint, Plaintiffs' request for yet another opportunity to amend should be denied. *See, e.g.*, *Endencia v. Am. Psychiatric Ass'n*, No. 1:19-cv-3161, 2019 WL 4934601, at *4 (N.D. Ill. Oct. 7, 2019) (denying leave to amend as futile where amendment would not cure defects), *aff'd*, 2020 WL 6386595 (7th Cir. June 29, 2020).

Dated: October 27, 2023

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: /s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld
Christopher A. Mair
77 West Wacker Drive, Suite 3100
Chicago, Illinois 60601
(312) 456-8400
ostfeldg@gtlaw.com
mairc@gtlaw.com

Sylvia E. Simson (*pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200
sylvia.simson@gtlaw.com

*Attorneys for The Estée Lauder Companies Inc., Bobbi Brown Professional Cosmetics, Inc., Estée Lauder Inc., Smashbox Beauty Cosmetics, Inc., and Too Faced Cosmetics, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on October 27, 2023, the foregoing was filed using the Court's CM/ECF system, which provides notice of such filing to all counsel of record in this action.

/s/ *Gregory E. Ostfeld*
Gregory E. Ostfeld
