UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Celia Castelaz, *et al.* <br><br> *Plaintiffs*, <br><br> v. <br><br> The Estée Lauder Companies., Inc., *et al.*, <br><br> *Defendants*. | No. 22 CV 5713 <br><br> Judge Lindsay C. Jenkins |

**ORDER**

Plaintiffs Celia Castelaz, Brittanie Nalley, Northa Johnson, and Lori Carter (collectively, "Plaintiffs") bring this putative class action, individually and on behalf of all other similarly situated persons, against Defendants The Estée Lauder Companies Inc. ("Estée Lauder Co."), Bobbi Brown Professional Cosmetics, Inc., Estée Lauder Inc., Smashbox Beauty Cosmetics, Inc., and Too Faced Cosmetics, LLC (collectively, "ELC") and Defendant Perfect Corp. ("Perfect", collectively, "Defendants"). Plaintiffs allege three separate violations of the Illinois Biometric Information Privacy Act, 740 ILL. COMP. STAT. 14 /1 *et seq.* ("BIPA"). [Dkt. 32.]

Before the Court is ELC's motion to dismiss for failure to state a claim, [Dkt. 39], and Perfect's motion to dismiss for lack of personal jurisdiction or, alternatively, for failure to state a claim. [Dkt. 42.] For the reasons stated below, Perfect's motion to dismiss for lack of personal jurisdiction is granted.[1] ELC's motion to dismiss for failure to state a claim is granted, and the Amended Complaint is dismissed without prejudice.

**I. Background[2]**

Estée Lauder Co., a Delaware corporation with its principal place of business in New York City, is one of the world's leading manufacturers, marketers, and sellers

---

[1] The Court does not reach Perfect's alternative argument for failure to state a claim, which can only be considered after resolution of the jurisdictional motion. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (holding that a court "may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).").

[2] For purposes of Defendants' motion to dismiss, the Court accepts as true all well-pled allegations set forth in the Amended Complaint and draws all reasonable inferences in Plaintiffs' favor. *See Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th

1

of skincare, makeup, fragrance, and hair care products. [Dkt. 32, ¶¶53−54.] Estée Lauder Co.'s cosmetic products are marketed through its subsidiary brand websites— Bobbi Brown, Estée Lauder, Smashbox, and Too Faced. [*Id.*, ¶54.] Perfect, a Cayman Islands corporation headquartered in New Taipei, Taiwan, is one of the world's leading providers of artificial intelligence ("AI") and augmented reality ("AR") services to the beauty and fashion industries. [*Id.*, ¶62.]

This suit concerns the virtual try-on tool ("VTO"), a technology that Perfect licenses to ELC and allows consumers visiting ELC's brand websites to virtually "try on" cosmetic products (*e.g.*, eyeshadow, lipstick, foundation, blush, etc.). [*Id.*, ¶¶10– 11, 13, 62, 79.] Visitors on the brand websites access the VTO tool by clicking the "TRY IT ON," "TRY A LOOK," "FIND YOUR SHADE," or "GET STARTED" button located on the cosmetic product's picture or next to the color options. [*Id.*, ¶94.] After clicking the button, visitors are prompted to upload a photo, take a photo, or use a live camera feed on their computer or mobile device camera. [*Id.*, ¶¶11, 78, 89−92, 95.] The VTO—embedded on the brand websites—detects facial characteristics from the photo or live camera feed, employs facial mapping to scan the user's face geometry, and then superimposes the selected cosmetic product onto the user's face. [*Id.*, ¶¶14, 78, 96.]

Plaintiffs, all citizens of Illinois, used ELC's VTOs on several occasions in 2021 and 2022. [*Id.*, ¶¶33, 38, 43, 48.] Although they received a pop-up message during their initial use of the VTO stating that their "image" would be utilized for the VTO experience, Plaintiffs allege that they were not informed that their biometric data would be captured and used. [*Id.*, ¶99.] The brand websites' privacy policies failed to reference biometric data, the VTOs, or the "virtual try-on experience." [*Id.*, ¶¶20, 102−06.][3] According to Plaintiffs, ELC did not require or obtain visitors' written consent to collect, capture, possess, and/or obtain their biometric data when they used the VTOs on the brand websites. [*Id.*, ¶¶99, 111.] Plaintiffs further allege that Defendants failed to craft, publish, comply with, or make publicly available a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers or biometric information obtained from brand website users. [*Id.*, ¶¶108−09.]

In the First Amended Complaint ("Amended Complaint"), Plaintiffs assert claims for failure to inform in writing and obtain written release from users prior to capturing, collecting, or storing biometric identifiers or biometric information in

---

Cir. 2019); *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (motion to dismiss for lack of personal jurisdiction). In setting forth the facts at the pleading stage, the Court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

[3] Plaintiffs allege that ELC updated the brand websites' privacy policies after this suit was filed, stating that they may capture biometric information. [*Id.*, ¶¶21, 107.]

violation of subsection 14/15(b) of BIPA (Count One); failure to develop and make publicly available a written policy for retention and destruction of biometric identifiers or biometric information in violation of subsection 14/15(a) of BIPA (Count Two); and for selling, leasing, trading or profiting from a person's biometric identifiers or biometric information in violation of subsection 14/15(c) of BIPA (Count Three). [*Id.* at 35−40.][4]

## II. Legal Standard

### A. Personal Jurisdiction

A plaintiff need not "alleg[e] personal jurisdiction in the complaint, but 'once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (quoting *Purdue Rsch. Found. v. Sanofi Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)). The strength of that burden depends on whether the court rules on the motion with or without "the benefit of an evidentiary hearing." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423 (7th Cir. 2010). Where the Court does not hold a hearing, the plaintiff "bears only the burden of making a prima facie case for personal jurisdiction." *Id.*

A court evaluating a 12(b)(2) motion generally must accept the truth of the complaint's well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. But where, as here, the defendant challenges the complaint's jurisdictional allegations with evidence—affidavits or declarations, for instance—"'the plaintiff has an obligation to go beyond the pleadings and submit affirmative evidence'" of her own. *Sorsby v. TruGreen Ltd. P'ship*, 2020 WL 7641288, at *2 (N.D. Ill. Dec. 23, 2020) (quoting *Shanahan v. Nat'l Auto Prot. Corp.*, 2020 WL 3058088, at *1 (N.D. Ill. June 9, 2020)); *see also Purdue Rsch. Found.*, 338 F.3d at 783. If the plaintiff fails to do so, the presumption flips and the court "will accept as true any facts in the defendant['s] affidavits that do not conflict with" evidence introduced by the plaintiff. *Curry*, 949 F.3d at 393; *Swanson v. City of Hammond, Ind.*, 411 F. App'x 913, 915 (7th Cir. 2011) (accepting "allegations relating to personal jurisdiction as true except where the defendants refute them through undisputed affidavits").

### B. Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. "To survive a motion to dismiss under Rule 12(b)(6), plaintiff's complaint must allege facts which, when taken as true, 'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Ill. State Toll*

---

[4] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

*Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court "accept[s] all well-pleaded facts as true and draw all reasonable inferences in plaintiff's favor." *Id.* at 600 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)).

### III. Analysis

#### A. Perfect's Motion to Dismiss for Lack of Personal Jurisdiction

The Court first addresses Perfect's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). In diversity cases, the Court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see* Fed. R. Civ. P. 4(k)(1)(A). The Illinois long-arm statute "permits its courts to exercise jurisdiction on any basis permitted by the Illinois and United States Constitutions." *Hyatt*, 302 F.3d at 714 (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000) ("*Reimer Express*")); 735 ILCS 5/2-209(c).

The Due Process Clause of the Fourteenth Amendment "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (cleaned up). To this end, it permits courts to exercise personal jurisdiction over an out-of-state defendant only if that defendant has "sufficient minimum contacts with [the forum State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tamburo*, 601 F.3d at 700–01 (cleaned up). Personal jurisdiction may be general or specific, *see Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014), but in both cases, a key issue is foreseeability: whether "the defendant's conduct and connection with the forum are such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Plaintiffs do not argue that the Court has general jurisdiction over Perfect; only specific jurisdiction is at issue here. [*See* Dkt. 43 at 9–10 (arguing that the Court lacks general jurisdiction over Perfect); Dkt. 57 at 9–15 (not disputing this point and only arguing that the Court has specific personal jurisdiction).]

Specific jurisdiction "covers defendants less intimately connected with a State [than general jurisdiction], but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. ----, 141 S. Ct. 1017, 1024 (2021). To establish specific personal jurisdiction over a defendant, the plaintiff must show: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) [the] exercise of personal jurisdiction . . . comport[s] with traditional notions of fair play

4

and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2020) (citation omitted).

A plaintiff, third party, or co-defendant cannot be the sole link between a defendant and the forum. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). While "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties," its "relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286. Instead, the plaintiff must show that the defendant purposefully directed its activities at Illinois, and "the relationship among the defendant, the forum, and the litigation must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Curry*, 949 F.3d at 396 (emphasis in original) (quoting *Burger King Corp.*, 471 U.S. at 475).

Turning to the first element, Perfect argues that Plaintiffs cannot show that Perfect directed its activities toward or had purposeful contacts with Illinois. [Dkt. 43 at 10, 13.] In support, Perfect provides a declaration from its Chief Strategies Officer, Louis Chen, stating that Perfect is incorporated in the Cayman Islands with its principal place of business in New Taipei City, Taiwan. [Dkt. 44, ¶2.] Perfect has never been registered to do business, designated an agent for service of process, or had a mailing address or telephone listing in Illinois. [*Id.*, ¶6.] Perfect also has never had a physical presence—including real estate, an office, or a place of business—or had any employees in Illinois. [*Id.*, ¶7.] Moreover, Perfect does not maintain bank accounts or physical assets in Illinois, nor does it direct any advertising or marketing to Illinois. [*Id.*, ¶¶8−9.] Perfect never solicited business, had sales, or had meetings or discussions with ELC in Illinois, and it has not targeted any commercial activity in Illinois. [*Id.*, ¶¶10−12.]

Plaintiffs do not dispute these points or present any evidence to rebut Perfect's declaration. [*See* Dkt. 57; *id.* at 11−12.] Instead, in Plaintiff's view, whether Perfect was registered to do business, maintained a physical presence or bank account, or directed advertisements in Illinois is irrelevant to the Court's specific personal jurisdiction analysis because Perfect purposefully directed its conduct at Illinois "by running the VTOs on the Brand Websites," and by "designing the VTOs to reach into Illinois and place Perfect's code into Illinois consumers' devices to capture their biometrics." [Dkts. 57 at 11−12; 32, ¶¶31, 80−81.]

In its response, Perfect maintains that any alleged connection between Perfect and Illinois was initiated by Plaintiffs' own interactions with the VTOs on ELC's brand websites, not Perfect's specific actions with Illinois. [Dkts. 60 at 6−9; 43 at 11−12, 14.] In similar circumstances, Perfect argues, courts have found that the plaintiff's use of an out-of-state vendor's biometric-enabled technology in the forum state, standing alone, was insufficient to establish personal jurisdiction. *See, e.g., Redd v. Amazon Web Servs., Inc.*, 2023 WL 3505264, at *3 (N.D. Ill. May 17, 2023) (concluding that the plaintiff failed to make a prima facie showing of personal

5

jurisdiction because other than registering to do business in Illinois, the defendant's only contact with the state was providing its facial recognition technology to a third party who used it in Illinois); *Gutierrez v. Wemagine.AI LLP*, 2022 WL 252704, at *2 (N.D. Ill. Jan. 26, 2022) ("*Gutierrez I*") (granting a motion to dismiss for lack of personal jurisdiction where the only connection between the defendant and the forum state was the plaintiff, who chose to download the defendant's mobile biometric AI app—the fact that the app was used in the forum state did not on its own create a basis for personal jurisdiction over the defendant); *Salkauskaite v. Sephora USA, Inc.*, 2020 WL 2796122, at *5 (N.D. Ill. May 30, 2020) (finding no personal jurisdiction where a third party used the defendant's biometric AR technology in the forum state and the only evidence of minimum contacts was defendant's reposting of an article about it on social media).

The Court agrees. Even assuming, as the Plaintiffs allege, that Perfect runs the VTOs on the brand websites, this alone is insufficient to establish personal jurisdiction. *Kukovec v. Estee Lauder Companies, Inc.*, 2022 WL 16744196, at *3 (N.D. Ill. Nov. 7, 2022) (concluding that Estée Lauder Co.'s VTO tool would not, by itself, establish personal jurisdiction because "a defendant can't be 'haled into court simply because [it] owns or operates a website that is accessible in the forum state, even if that site is interactive.'") (quoting *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014)).

The minimum contacts analysis typically looks to the contacts a defendant itself makes with the forum state, not contacts made by the plaintiff, another defendant, or a third party. *See Walden*, 571 U.S. at 284; *Purdue Rsch. Found.*, 338 F.3d at 780 ("[I]t must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity." (citing *Burger King Corp.*, 471 U.S. at 474)). In this case, there is no indication that Perfect ever "reached into" or targeted Illinois using the VTOs on ELC's brand websites. Plaintiffs' claim hinges solely on the allegation that they visited ELC's brand websites, where they accessed and engaged with the VTOs; thus, the only connections between Perfect and the forum state are Plaintiffs and ELC. *Gutierrez I*, 2022 WL 252704, at *2 (holding that downloading and using defendant's app in the forum state was insufficient for personal jurisdiction, "and to do so would essentially be to hold that [defendant] is subject to personal jurisdiction in the entire United States, because [the app] is available nationwide (as well as internationally)."); *Gutierrez v. Wemagine.AI LLP*, 2022 WL 6129268, at *2 (N.D. Ill. Oct. 7, 2022) ("*Gutierrez II*") (concluding that like an interactive website, any alleged harm was occasioned by the plaintiff's own interaction with the online app—downloading, accessing, and then uploading his photo—rather than the defendant's specific actions in the forum state). But due process requires more—Plaintiffs must show that Perfect purposefully directed its activities or availed itself to Illinois, and the relationship between Perfect, Illinois, and the litigation arose out of contacts that Perfect created *itself* with Illinois. *See Curry*, 949 F.3d at 396 (emphasis added) (citation omitted).

Perfect's unrefuted evidence states that the VTO is geographically neutral in the United States and operates the same for any user who chooses to access and engage with it on ELC's brand websites, regardless of the state in which the user is located. [Dkt. 44, ¶13.] Plaintiffs and other consumers can only interact with the VTOs by visiting ELC's brand websites and downloading them onto their device browser. [*Id.*, ¶14−15.] These types of "random, fortuitous, or attenuated" contacts and unilateral activity of a plaintiff or a third party cannot give rise to personal jurisdiction. *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing *Burger King Corp.*, 471 U.S. at 475). Without some indication that Perfect itself targeted Illinois, *Ivanov*, 642 F.3d at 558−59, it cannot be subjected to personal jurisdiction here.

The cases cited by Plaintiffs in support of its argument are inapposite because, unlike here, the defendants, who operated interactive websites that were accessible in Illinois, continuously and successfully targeted the Illinois market through advertisements or sales. *See, e.g., uBID, Inc.*, 623 F.3d at 427−28 (holding that the defendant's contacts with Illinois were sufficient for specific jurisdiction because it had "thoroughly, deliberately, and successfully exploited the Illinois market" via nationwide advertising and sales, even though it did not specifically target Illinois customers in its advertising) (citing *Keeton v. Hustler Mag., Inc.,* 465 U.S. 770, 779−81 (1984)); *Trio v. Turing Video, Inc.*, 2022 WL 4466050, at *5 (N.D. Ill. Sept. 26, 2022) (finding personal jurisdiction where the defendant executed numerous "purchase orders with Illinois customers for sale and shipment of [COVID-19 screening equipment]."); *Greene v. Karpeles*, 2019 WL 1125796, at *7 (N.D. Ill. Mar. 12, 2019) (finding that the defendant subjected himself to jurisdiction in Illinois by "encourag[ing] users to create and maintain accounts on [a bitcoin exchange] online platform" and holding customers' assets).

Without citation to any supporting case law, Plaintiffs also argue that exercising personal jurisdiction over Perfect is justified because its online privacy policy and terms of service provide that Perfect may collect information about a VTO user's location, refers to BIPA, and states that it or a third party using VTO technology may collect biometric information. [Dkt. 57 at 13−14.] According to Plaintiffs, this shows that Perfect knew and expected to be sued in Illinois and sought the protection of Illinois law in connection with licensing and running the VTOs. [*Id.*] The Court has not identified any Seventh Circuit case law addressing whether a defendant's reference to a state's privacy laws on its website and/or terms of use confers personal jurisdiction over the defendant. Courts in other jurisdictions have found that invoking a forum state's privacy laws on a website or in terms of use, standing alone, is insufficient to show that a defendant targeted consumers in the forum state. *See, e.g., Will Co. v. Does 1-20*, 2022 WL 18878042, at *4 (W.D. Wash. Dec. 19, 2022) ("References to United States' laws in [an advertising broker's website's] terms of service agreement is not sufficient to show Defendants' intentional actions were expressly aimed at this forum."); *L-Nutra, Inc. v. Prevail Solutions, LLC*, 2021 WL 6103084, at *4 (C.D. Cal. Oct. 12, 2021) ("In the absence of evidence that Defendant's [product] or the content of its website was specifically targeted toward a

7

California market, the waiver of [the California Code] in the website's terms of service merely reflects an awareness that California residents might visit Defendant's website," which is insufficient to establish the defendant targeted California consumers); *Voodoo SAS v. SayGames LLC*, 2020 WL 3791657, at *5 (N.D. Cal. July 7, 2020) (holding that although the defendant's privacy policy and terms of use referred to California consumer privacy law, the reference showed that the defendant knew its product might be purchased by California residents—they do not indicate that the defendant specifically aimed its product at California residents). Given these holdings, together with the lack of any case law citation to the contrary, the Court is not persuaded that Perfect's privacy policy establishes personal jurisdiction.

Notwithstanding, Plaintiffs attempt to salvage this argument by requesting that the Court permit jurisdictional discovery. [Dkt. 57 at 15−16.] District courts have discretion to authorize limited discovery into jurisdictional issues, *see In re Sheehan*, 48 F.4th 513, 526 (7th Cir. 2022), but the Seventh Circuit has stated that "[a]t a minimum, the plaintiff must establish a colorable or prima facie showing of personal jurisdiction before discovery should be permitted." *Reimer Express*, 230 F.3d at 946. Plaintiffs have not done so here; thus, they are not entitled to jurisdictional discovery. *See Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782–83 (N.D. Ill. 2009) (holding that while the standard is low, jurisdictional discovery was unwarranted where the plaintiff relied solely on unsupported assertions of jurisdiction, the record was not unclear or ambiguous, and the defendant provided affirmative evidence that refuted the plaintiff's assertion of jurisdiction).[5]

### B.     ELC's Motion to Dismiss for Failure to State a Claim

The Court next addresses ELC's motion to dismiss Plaintiffs' Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ELC argues that Plaintiffs failed to plead facts that plausibly establish that ELC is capable of using the collected biometric data of brand website users to determine their identities. [Dkt. 40 at 11−12.] ELC emphasizes that the Amended Complaint does not allege that Plaintiffs provided ELC with any identifying information, such as names and email addresses (or that they were required to do so in order to use the VTOs), that could connect the VTOs' facial geometry scans to Plaintiffs' identities. [*Id.* at 13.]

BIPA imposes certain restrictions on how "private entit[ies]" may collect, retain, use, disclose, and destroy "biometric identifiers" and "biometric information." 740 ILL. COMP. STAT. 14/15. "Biometric identifier" generally means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," apart from various exclusions. *Id.* 14/10. "Biometric information" refers to "any information, regardless

---

[5]     Having concluded that Plaintiffs failed to meet their burden in establishing the first element of the specific personal jurisdiction analysis, the Court declines to consider the remaining elements. *See N. Grain. Mktg., LLC*, 743 F.3d at 496 (explaining that when a defendant lacks minimum contacts with the forum state, the court need not analyze, for example, whether personal jurisdiction comports with fair play and substantial justice).

of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual," except for information derived from "items or procedures excluded under the definition of biometric identifiers." *Id.* Biometric information is information "based on an individual's biometric identifier used to identify an individual." *Id.* Conversely, as Plaintiffs recognize, a biometric identifier, such as facial geometry, is a unique personal feature that "*can be used* to identify a person." [Dkt. 58 at 9 (emphasis added) (citing *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1094 (N.D. Ill. 2017)).

The Court finds instructive a recent order in a nearly identical case, *Clarke et al. v. Aveda Corp.*, No. 21-cv-4185 (N.D. Ill. Dec. 1, 2023), ECF No. 43. There, the plaintiffs alleged that Aveda's virtual hair color try-on tool scanned, collected, and stored plaintiffs' biometric facial geometry in violation of BIPA. [Dkt. 61-1 at 2.] The court considered Aveda's argument that the plaintiffs' complaint should be dismissed because any collection of data by Aveda did not constitute biometric identifier or biometric information under BIPA without allegations that Aveda was capable of identifying individuals using the virtual hair color try-on tool. [*Id.* at 3.] The court in *Clarke* granted Aveda's motion to dismiss because the complaint contained no plausible allegations that Aveda's collection of biometric data made Aveda capable of determining their identities. [*Id.* at 4.]

In reaching its conclusion, the court in *Clarke* relied on *Daichendt v. CVS Pharmacy, Inc.*, 2022 WL 17404488, at *5 (N.D. Ill. Dec. 2, 2022) ("*Daichendt I*"), where the court dismissed plaintiffs' BIPA section 15(b) claim because the complaint failed to plead that CVS was capable of identifying them in connection with its collection of their digital passport photos that were scanned for biometric identifiers. 2022 WL 17404488, at *5. Specifically, the court concluded that plaintiffs failed to allege that CVS had collected plaintiffs' "real-world" personally identifying information, such as names and addresses, which could be connected to the collected scans of their facial geometry. *Id.* After *Daichendt I*, plaintiffs amended their complaint, alleging that CVS had collected their names, email addresses, and phone numbers before scanning their facial geometries. *Daichendt v. CVS Pharmacy, Inc.*, 2023 WL 3559669, at *1 (N.D. Ill. May 4, 2023) ("*Daichendt II*"). In *Daichendt II*, the court held that the plaintiffs "plausibly allege[d] that defendant collected and stored their personal contact data ('real-world identifying information'), such as their names and email addresses, which made [CVS] capable of identifying them when associated with scans of their face geometry ('biometric identifiers')." *Id.*

The same is true here: Plaintiffs fall short of providing any specific factual allegations that ELC is capable of determining Plaintiffs and members of the Illinois class members' identities by using the collected facial scans, whether alone or in conjunction with other methods or sources of information available to ELC (*e.g.*, the

9

user's account information such as their name, email, physical address, etc.).[6] "[P]laintiffs have failed to plead the most foundational aspect of a BIPA claim." *Daichendt I*, 2022 WL 17404488, at *5.

## IV. Conclusion

For the reasons stated above, Perfect's motion to dismiss for lack of personal jurisdiction is granted. [Dkt. 42.] ELC's motion to dismiss for failure to state a claim is granted. [Dkt. 39.] The Amended Complaint is dismissed without prejudice. Plaintiffs may file a second amended complaint by February 8, 2024.

Enter: 22-cv-5713
Date: January 10, 2024

Lindsay C. Jenkins
United States District Judge

---

[6] Plaintiffs contend that their assertion that ELC created a complete scan of Plaintiffs' facial geometry, "an expressly protected item unique to each Plaintiff that can be used to identify Plaintiffs" is "sufficient to trigger BIPA's protections," and "[n]othing more need be alleged to assert that ELC was required to comply with BIPA." [Dkts. 62-1 at 3; 58 at 8–9, 12.] In support of its proposition, Plaintiffs rely on one out-of-district opinion, *Colombo v. YouTube, LLC*, 2023 WL 4240226 (N.D. Cal. June 28, 2023), where the court held that biometric identifier encompasses any "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," and that the plaintiff need only allege that defendant captured and scanned plaintiff's biometric data to trigger BIPA. *See id.* at *3–4. The Court finds *Colombo* distinguishable. Unlike Plaintiffs here, the plaintiff in *Colombo* alleged that he was a YouTube user who uploaded multiple videos to his YouTube account. 2023 WL 4240226, at *4 (citation omitted). Here, the Court agrees with the conclusion in *Clarke*, and that as pled, the Amended Complaint does not plausibly allege that the facial geometry scans made ELC capable of determining identities.